A97A1079, A97A1164. IN THE INTEREST OF B. C. P., a child (two cases).
(493 SE2d 258)

BEASLEY, Judge.

Tonia Pennyman appeals the juvenile court's award finding her son to be deprived within the meaning of OCGA § 15-11-2 (8) and placing temporary custody in his paternal grandmother, appellee Dorothy Paige. Pennyman enumerates three errors: (1) the juvenile court lacked jurisdiction; (2) the juvenile court found deprivation without clear and convincing evidence; and (3) the juvenile court wrongly failed to provide Pennyman with counsel and the cost of the transcript on appeal. The appeal was taken both directly and by application under OCGA § 5-6-35 (a). We granted the application due to a perceived ambiguity in the procedure for appealing deprivation judgments. That appeal is now consolidated with the direct appeal, which has been ruled to be the proper procedure. See *In the Interest of J. P.,* 267 Ga. 492 (480 SE2d 8) (1997).

At the time of the hearing in October 1996, Pennyman was age 25 and her son B. C. P., born January 18, 1994, was over two and one-half. B. C. P.'s father, Dorothy Paige's son Benny, was then incarcerated. Pennyman, who was not married to Benny, lived in the Paige home for about one year before B. C. P.'s birth and afterward for about four months. While there, the Paiges never asked her for money and refused offers to help defray expenses. When the boy was four months old, he and Pennyman moved to Thomaston where she found employment which lasted until June or July 1995. She was employed part-time thereafter, although she had not worked for over one month prior to the deprivation hearing. When Pennyman worked, her mother or Mrs. Paige kept the boy. Mrs. Paige never objected to doing so. At some point, the Paiges volunteered to pay for day care in Griffin.

In July 1995, apparently about the same time day care began, Pennyman voluntarily signed documents by which the probate court of Lamar County granted temporary guardianship of B. C. P. to the Paiges. After that, the boy lived with the Paiges during the week and with his mother on most weekends. Virtually no evidence was presented that the child received anything other than good care when he was with Pennyman, the Paiges, Pennyman's mother, or in day care.

In September 1996, a dispute arose about when and under what

conditions Pennyman could see the boy or retrieve him from day care. On October 6, after the child spent a weekend with his mother, Pennyman told Mr. Paige she was ready to take care of the child herself. Mr. Paige asked for one more week under the current arrangement and took the child back. The next day, the Paiges' lawyer wrote to Pennyman to complain that she failed to provide the Paiges notice when she got her son from day care. The letter does not question Pennyman's care of the child but reminded Pennyman that the Paiges were B. C. P.'s guardians, and a copy of the guardianship order was enclosed. Pennyman did not receive the letter until Friday, October 11. The following Tuesday (October 15), after an unsuccessful attempt on Monday, Pennyman obtained revocation of the temporary guardianship granted to the Paiges and retrieved B. C. P. from day care by showing the revocation of guardianship order to the day care operator. About four hours later "investigators" arrived at Pennyman's house and said they had court orders to take B. C. P.

Meanwhile, on October 10, Mrs. Paige filed the deprivation petition in Spalding County that led to this appeal. The juvenile court held an ex parte emergency hearing on that same day and ordered the child to be placed in the "exclusive custody of Dorothy C. Paige until further order of this Court." It further ordered "that if necessary a deputy of the Spalding County Sheriff's Department . . . shall assist the petitioner in taking the child in question into custody wherever [sic] depending upon the present location of the child pending the 72-hour hearing." The 72-hour hearing was scheduled for October 15, and the order stated that Pennyman and Benny Paige "are hereby notified to attend the emergency hearing. . . ." It is undisputed that Pennyman received notice only after the hearing was held and after authorities picked up the child. When Pennyman did not appear on October 15, the hearing was rescheduled and held on October 18. Pennyman appeals the resulting judgment.

1. The first issue is jurisdictional. Pennyman contends the petition does not properly allege the child was then presently deprived because Mrs. Paige had temporary guardianship when she filed the petition on October 10, and therefore the juvenile court's jurisdiction was not invoked under OCGA § 15-11-5 (a) (1) (C). She also contends the deprivation petition is in fact a custody dispute in disguise that falls outside juvenile court jurisdiction.

OCGA § 15-11-5 provides that a juvenile court shall have "exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action: (1) Concerning any child: . . . (C) Who is alleged to be deprived. . . ." See *In the Interest of J. P.*, supra, 267 Ga. 492. This jurisdiction extends to custody controversies involving a deprived child. *In re J. R. T.*, 233 Ga. 204, 205 (210 SE2d 684) (1974). Of course, merely using the word "deprivation" in a petition

does not invoke the juvenile court's jurisdiction.

"[I]n a custody controversy in the nature of habeas corpus the juvenile court has concurrent jurisdiction to decide the issue only if the case is transferred to the juvenile court by proper order of the superior court. . . ." Id. at 205; OCGA § 15-11-5 (c). The words "in the nature of habeas corpus" have been used to describe situations where it is clear that a parent is simply attempting to obtain custody of a child rather than protect the child from alleged deprivation. *Griggs v. Griggs*, 233 Ga. 752 (213 SE2d 649) (1975). In *Griggs*, the children were already living with their father when he filed a petition in juvenile court alleging that returning the children to their mother, who had legal custody, would cause irreparable harm. The Supreme Court has not limited its analysis of whether a deprivation proceeding is in the nature of habeas corpus to disputes between parents. In *J. R. T.*, a custody dispute between a father and the child's maternal grandparents was found to be "in the nature of habeas corpus." *In re J. R. T.*, supra at 205-206.

Paige's petition alleges "[t]hat said child is without proper parental care or control, subsistence, education as required by law, or other care and control necessary for his physical, mental or emotional health or needs." At the time the petition was filed, according to the Lamar County guardianship order, it was Paige's duty "to see that the ward is adequately fed, clothed, sheltered, educated, and cared for, and that the ward receives all necessary medical attention." In addition, OCGA § 29-2-1 provides: "The power of a guardian over the person of his ward shall be the same as that of the parent over his child, the guardian standing in place of the parent. In like manner it shall be the duty of a guardian to protect and maintain and, according to the circumstances of the ward, to educate him." As Paige had assumed the status and obligations of a parent by way of the guardianship, "she stands 'in loco parentis.'" *Clabough v. Rachwal*, 176 Ga. App. 212, 214 (335 SE2d 648) (1985). Thus, Mrs. Paige herself had the legal duty, pursuant to the guardianship order and Georgia law, to provide for the child beginning July 12, 1995, and continuing through and including October 15, 1996, the day temporary guardianship ceased.

Her claim in Spalding County juvenile court that the child was deprived as of October 10, 1996, is a transparent attempt to use the juvenile court system to seek custody of the child. Custody disputes cloaked as deprivation actions are not within the exclusive original jurisdiction of the juvenile courts of Georgia. *Lewis v. Winzenreid*, 263 Ga. 459, 462 (435 SE2d 602) (1993) (juvenile court should not entertain a deprivation proceeding brought by one parent against another); *In the Interest of M. A.*, 218 Ga. App. 433, 434 (461 SE2d 600) (1995) ("Only the superior court may make the determination

that a deprivation proceeding between parents is not a custody dispute"); *In the Interest of W. W. W.*, 213 Ga. App. 732, 733-734 (1) (445 SE2d 832) (1994) (where entire record shows that subject of controversy is a custody dispute, "the juvenile court has concurrent jurisdiction to hear and determine custody issues only when the case is transferred by the superior court" (emphasis omitted)).

If Mrs. Paige had legitimate concerns about the care B. C. P. was receiving while in Pennyman's custody on weekends and other times, she could seek custody of the child pursuant to her powers as a guardian. *Beavers v. Williams*, 194 Ga. 875, 877-878 (23 SE2d 171) (1942). She could have attempted to enforce her rights by a habeas corpus proceeding or by a proper action in equity. Id. at 878. Because Paige's claim is in the nature of a habeas corpus proceeding and it has not been transferred to juvenile court from superior court pursuant to OCGA § 15-11-5 (c), the juvenile court did not have jurisdiction of the subject matter. The case should have been dismissed sua sponte, as every court is obligated to assure its own jurisdiction as a threshold matter. OCGA § 9-11-12 (h) (3).

2. Because the juvenile court lacked jurisdiction over what amounted to an attempt to gain legal custody, appellant's enumeration of error challenging the sufficiency of the evidence *is* moot.

3. Pennyman's final enumeration is that the court erred by failing to comply with three statutory procedural requirements and by denying her request for appointment of counsel and cost of transcript on appeal.

The first omission complained of relates to the requirements of OCGA §§ 15-11-26 (b) and 15-11-23. We do not address the merits for two reasons. One is that an enumeration may relate only to one ruling, one subject, and not constitute a collection of several matters. "When an appellant argues more than one error within a single enumeration, this court in its discretion may elect to review none of the errors so enumerated in violation of OCGA § 5-6-40 ([cit.]) or elect to review any one or more of the several assertions of error contained within the single enumeration and treat the remaining assertions of error therein as abandoned." *Robinson v. State*, 200 Ga. App. 515, 518 (2) (b) (408 SE2d 820) (1991). Accord *Wilson v. Southern R. Co.*, 208 Ga. App. 598, 606 (6) (431 SE2d 383) (1993). The other reason is that the issue was not raised in the trial court or ruled on by it, and thus there is nothing to review in this regard. "As a court of review, this court does not decide questions which were not raised and ruled on and preserved in the record below. [Cit.]" *Atlanta Gas Light Co. v. Ga. Pub. Svc. Comm.*, 212 Ga. App. 575, 577 (1) (442 SE2d 860) (1994).

The second and third issues raised are sufficiently related to one another and were jointly raised and ruled on below, so we are not adverse to their combination in one enumeration.

Pennyman sought appointed counsel and the costs for the transcript on appeal after the court ordered temporary custody to the Paiges. She sought this as alternative relief in the event the court denied her motion "for reconsideration" of its order, although she did not present it in a separate motion. That would have been more appropriate, as this request was being made for the first time, so there was nothing about it for the court to "reconsider."

Transcript costs are to be provided to an indigent parent appealing a deprivation action. Although the statutes are silent, the Supreme Court of Georgia has spoken. *Nix v. Dept. of Human Resources*, 236 Ga. 794 (225 SE2d 306) (1976), held that an indigent parent whose parental rights have been terminated is entitled to "a paupered copy of the transcript" for use in appealing the decision of the trial court. Id. Although the right in termination cases now stems from OCGA § 15-11-85 (b) and not OCGA § 15-11-30, the latter root still provides a firm base for government-provided transcripts in deprivation cases. The Supreme Court expressly referenced the predecessors to OCGA §§ 15-11-30 and 15-11-26 (e) as authority for the right to a paupered transcript. It applied the venerable principle of implication, "in est de jure."

With respect to counsel, Pennyman asked the court specifically to appoint her present counsel, who served as counsel throughout the proceedings below and here. (She did not seek appointed counsel prior to the effort to appeal.) The court denied reconsideration of its previous order and also denied the costs of the transcript and the appointment of the named counsel, who the court acknowledged was provided by the Georgia Legal Services Program.

OCGA § 15-11-30 (b) states that "a party is entitled to representation by legal counsel at all stages of any proceedings alleging delinquency" and that if the person is indigent as defined in subsection (a), the court must provide counsel. See also OCGA § 15-11-26 (e) (to assure early understanding, the summons is to notify the party summoned of this right). "Proceedings" has been used by the legislature to refer to appeals as well as lower court happenings. See, e.g., OCGA § 5-6-39 (a) (3) ("proceedings on appeal"); OCGA § 9-12-89 ("proceeding in the appellate court"); OCGA § 17-17-12 (a) (3) ("appellate court proceedings"). "It is presumed that the legislature knows and enacts statutes with reference to the existing law, including the decisions of the courts, and when there is nothing in the enactment to indicate that the words used were to have a new and different meaning they should be construed as having the same meaning that was attached to them before the enactment." *Buckhead Doctors' Bldg. v. Oxford Finance Co.*, 115 Ga. App. 52, 55 (153 SE2d 650) (1967). To be fully meaningful, the right to appointed counsel under OCGA § 15-11-30 for "all stages of any proceedings" includes the appellate process.

Pennyman filed an affidavit of indigence along with her motion and brief, and the affidavit was not traversed. In the absence of a specific instruction in OCGA § 15-11-30 setting out a procedure for determining indigence as defined in subsection (a), OCGA § 9-15-2 details the method which may be employed. See *Morris v. Dept. of Transp.*, 209 Ga. App. 40 (432 SE2d 638) (1993). The court must use its discretion and make a finding regarding indigence. *Livingston v. State*, 221 Ga. App. 563, 569 (2) (472 SE2d 317) (1996); *Hawkins v. State*, 222 Ga. App. 461, 462 (1) (474 SE2d 666) (1996).

There is no record or indication of inquiry or hearing on this matter, just a denial of the request, although in its order granting temporary custody the juvenile court found that Pennyman had not worked for over a month prior to the hearing in mid-October and had no income for herself. The court concluded that, based on these and other facts, she was not in a position to provide for the child. The affidavit of indigence with respect to the right to counsel and transcript costs was dated several weeks later, mid-November.

Mrs. Paige did not and does not contest Pennyman's indigence but responds that she did in fact have counsel and obtained from some source the costs of the transcript, so she can show no injury by the denial of her requests. But that is no answer. The fact that a non-governmental legal services organization volunteered to represent Pennyman does not absolve the State of its statutory obligation to provide indigent persons with counsel pursuant to OCGA § 15-11-30. That is demonstrated by *In re M. A. F.*, 254 Ga. 748, 753 (334 SE2d 668) (1985).

The record in this case strongly suggests that Pennyman is an "indigent person," as defined by OCGA § 15-11-30 (a), just as was true in *In re M. A. F.*, supra. If so, she was entitled to court-appointed counsel on appeal, and a transcript, which is a fact for the trial court to determine. The problem now is that the appellate work has been done, and it is too late for the trial court to exercise its discretion to select counsel, which is normally its prerogative. *Gibbs v. State*, 168 Ga. App. 417, 419 (309 SE2d 412) (1983); *Harris v. State*, 138 Ga. App. 388, 390 (226 SE2d 462) (1976). In the case of *In re M. A. F.*, appellant brought a separate appeal from the adverse indigency ruling, which was combined with the other appeals in the Supreme Court's opinion on the merits of the appeal, but the Supreme Court did not answer the question we now face even though it was present there. The *Nix* case, on the other hand, first proceeded on the appeal of the denial of a paupered transcript; the mother filed a separate notice of appeal from the order adversely affecting her parental rights, which apparently was held in abeyance. So when it was held that Nix was entitled to a government-provided transcript, the case was reversed with direction for the readying of the main appeal,

which could not have proceeded without the transcript. Here the appellant has combined her dissatisfaction with both orders in one appeal. The solution is for present counsel to be appointed, albeit after the fact to a large extent, if the trial court finds that Pennyman was indigent.

The judgment of the juvenile court is reversed, and the case is remanded with direction that the court conduct a hearing on Pennyman's indigency as of the time of the motion for reconsideration, and, if indigency is found, that an order be entered entitling Pennyman to the appointment of current counsel as appellate counsel plus the costs of the transcript at government expense.

*Judgment reversed and case remanded. McMurray, P. J., and Smith, J., concur.*

DECIDED NOVEMBER 3, 1997.

*Dianne N. Paglialonga, Vicky O. Kimbrell, Phyllis J. Holmen, Lisa J. Krisher*, for appellant.

*Mullins & Whalen, Harold A. Sturdivant*, for appellee.