563 S.E.2d 514 (2002)
254 Ga. App. 661
In the Interest of J.W.K., a child.
No. A01A2290.
Court of Appeals of Georgia.
March 29, 2002.
William R. Thompson, Jr., Calhoun, for appellant.
*515 James F. Ledbetter, Joseph D. Little, Dalton, for appellee.
ANDREWS, Presiding Judge.
The mother of J.W.K. appeals from an order of the juvenile court finding her nine-year-old child was deprived and awarding temporary legal custody of the child to the child's paternal aunt and uncle for a period of two years. The mother claims the juvenile court lacked jurisdiction and that the disposition portion of the order awarding custody of the child failed to comply with statutory requirements for efforts to reunify her with the child. Although we find the juvenile court properly exercised jurisdiction, we conclude that the disposition portion of the court's order failed to comply with the requirements of OCGA § 15-11-58 regarding efforts, if appropriate, to reunify the mother and child. Accordingly, we affirm the portion of the order finding the child was deprived, reverse the disposition portion of the order, and remand the case to the juvenile court for consideration of the requirements of § 15-11-58 in the disposition of the child.
1. The mother first challenges the jurisdiction of the juvenile court, asserting that this is in reality a custody dispute and therefore should have been brought in the superior court. This contention is without merit.
The juvenile court has exclusive original jurisdiction over juvenile matters and is the sole court in which to initiate an action concerning any child who is alleged to be deprived. [OCGA § 15-11-28(a)(1)(C).][1] The definition of a deprived child, as contained in OCGA § 15-11-2(8), focuses upon the needs of the child regardless of parental fault. The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue. If the child is found to be deprived, the juvenile court is authorized under [OCGA § 15-11-55(a) ] to impose alternative orders of disposition best suited to the protection and physical, mental and moral welfare of the child. Although the determination of where the child will be placed is necessary to such disposition, the proceeding itself is to determine whether the child is deprived and is not an action brought to decide custody matters.
(Citations, punctuation, footnote and emphasis omitted.) In the Interest of J.P., 267 Ga. 492, 480 S.E.2d 8 (1997).
In the case of a deprivation petition brought by relatives against the parent, we examine the petition with particular care to ensure that it is not "a transparent attempt to use the juvenile court system to seek custody of the child." (Citation and punctuation omitted.) In the Interest of K.R.S., 253 Ga.App. 678, 680(1), 560 S.E.2d 292 (2002). Here, the petition brought by the child's paternal aunt and uncle (the petitioners) alleges that the mother abandoned the child to the custody of the petitioners for a period of seven years while failing to pay child support, that the mother has no stable home or residence and is unable to care for the child, and that the mother's live-in companion has threatened physical harm to the child. This was a valid deprivation petition, see OCGA § 15-11-2(8)(C) (abandonment ground for finding deprivation), and properly within the jurisdiction of the juvenile court.[2]
The mother's reliance upon In the Interest of B.C.P., 229 Ga.App. 111, 112-114(1), 493 *516 S.E.2d 258 (1997), is misplaced. In that decision, we found lack of jurisdiction in the juvenile court because the petitioner alleging deprivation had been appointed the legal guardian of the child. As the petitioner "had assumed the status and obligations of a parent by way of the guardianship, she [stood] in loco parentis." (Citation and punctuation omitted.) Id. at 113(1), 493 S.E.2d 258. The petitioner accordingly had an equal obligation to provide for the child, and the child, therefore, was not "deprived" within the meaning of the Code. Id. at 113-114, 493 S.E.2d 258. Here, in contrast, no legal guardianship exists, and B.C.P. is therefore inapplicable.
2. The mother also contends the juvenile court erred by refusing to comply with the requirements of OCGA § 15-11-58 regarding efforts to reunify her with the child.
This case was initiated by the child's paternal aunt and uncle who filed a petition in the juvenile court on February 24, 2000, alleging that the nine-year-old child was deprived and seeking temporary legal custody of the child. The petition was filed nine days after the death of the child's father, the brother of the petitioning aunt. After a hearing on February 28, 2000, at which no formal evidence was presented, the juvenile court entered a "Temporary Order" on March 24, 2000, finding the child was deprived. In that order, the court further held, "balancing the protection of the child's physical, mental, moral, educational and health needs against a need to reunify the child with his mother, if possible, that temporary legal custody should be placed in [the petitioners] subject to specified visitation rights in [the mother]." Thereafter the order sets forth the mother's visitation rights and child support obligations as agreed to by the parties and states that the order shall be reviewed by the court on May 26, 2000.
The court conducted a review of its March order in a hearing held on July 7, 2000, during which evidence was presented. After the hearing, the court entered an order on September 13, 2000, in which it restated the previous finding that the child was deprived and set forth terms of disposition for the deprived child. In concluding the child was deprived, the court found the child had been living with the petitioners with the mother's consent since he was about two years old and that the mother's contacts with the child during the last four years consisted of visits about once a month and on occasions like Christmas and birthdays. In the disposition portion of the order, the court awarded temporary legal custody of the child to the petitioners for a period of two years and essentially concluded that, based on the evidence presented at the hearing, it was not in the child's best interest for the court to require the petitioners or the child to make any effort to facilitate reunification of the child with the mother. There was evidence that the child was afraid of the mother's boyfriend, and the child's school counselor (a licensed professional counselor) testified for the petitioners that, based on counseling sessions she had with the child at school, it was her opinion that attempts to reunify the child with the mother were not in the child's best interest.
In addressing the mother's contention that the court was required to consider efforts to reunify her with the child, the court held that, although Title 15 of the Georgia Code required the courts and the Department of Family & Children Services (DFACS) to make reunification efforts or develop plans for permanent placement of a deprived child, "nothing in this Code requires case plans, reviews, special findings or goals for deprived children who are not under the government's care." The court reasoned that, since this was a "private" deprivation petition and not one brought by DFACS, it was "not inclined to inflict such a bureaucratic morass upon every private case which comes to court without regard to the child's best interest." The court held that "the court declines to require [the petitioners] or [the child] to facilitate reunification." Nevertheless, the Court did not conclude that reunification was not possible, holding that, "[i]f it should appear that [the child] is no longer deprived, the court can consider a return of custody." The court struck the visitation privileges granted to the mother in the temporary order and held that the petitioners "may allow visitation between [the child] and his mother *517 under the terms and conditions that they determine are in [the child's] best interest, and at such times and locations as they decide."
OCGA § 15-11-58 sets forth requirements for court orders which temporarily remove a deprived child from the child's home and implements a process of review for determining whether reunification of the child and parent or permanent placement of the child is appropriate. Subsection (a) of § 15-11-58 provides as follows:
(a) A court's order removing a child from the child's home shall be based upon a finding by that court that continuation in the home would be contrary to the welfare of the child. The court shall also determine as a finding of fact whether reasonable efforts were made by the Division of Family and Children Services of the Department of Human Resources and any other appropriate agencies to preserve and reunify families prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from that child's home, and to make it possible for the child to return safely to the child's home. Such findings shall also be made at every subsequent review of the court's order under this chapter. (1) In determining reasonable efforts to be made with respect to a child, as described in this subsection, and in making such reasonable efforts, the child's health and safety shall be the paramount concern; (2) Except as provided in paragraph (4) of this subsection, reasonable efforts shall be made to preserve and reunify families: (A) Prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and (B) To make it possible for a child to return safely to the child's home; (3) If continuation of reasonable efforts of the type described in paragraph (2) of this subsection is determined to be inconsistent with the permanency plan for the child, reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan and to complete whatever steps are necessary to finalize the permanent placement of the child; (4) Reasonable efforts of the type described in paragraph (2) of this subsection shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that: (A) The parent has subjected the child to aggravated circumstances which may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse; (B) The parent has: (i) Committed murder of another child of the parent; (ii) Committed voluntary manslaughter of another child of the parent; (iii) Aided or abetted, attempted, conspired, or solicited to commit murder or voluntary manslaughter of another child of the parent; or (iv) Committed a felony assault that results in serious bodily injury to the child or another child of the parent; or (C) The parental rights of the parent to a sibling have been terminated involuntarily; (5) If reasonable efforts of the type described in paragraph (2) of this subsection are not made with respect to a child as a result of a determination made by a court of competent jurisdiction in accordance with paragraph (4) of this subsection: (A) A permanency hearing shall be held for the child within 30 days after such determination; and (B) Reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan and to complete whatever steps are necessary to finalize the permanent placement of the child; and (6) Reasonable efforts to place a child for adoption or with a legal guardian may be made concurrently with reasonable efforts of the type described in paragraph (2) of this subsection.
Contrary to the court's disposition order in this case, there is nothing in the language of OCGA § 15-11-58(a) or in subsequent subsections (b) through (q) of the statute that limits it to deprivation petitions brought by DFACS or that excludes deprivation petitions brought by individuals. For example, subsection (b) of the statute requires that, within 30 days of the court's award of temporary custody, DFACS shall prepare a report for consideration by the court which either provides a plan and goals for reunification services or states why reunification is not appropriate. An evaluation by DFACS of the need for reunification services and the *518 need for DFACS resources to implement a reunification plan, if adopted by the court, is just as critical whether a court awards temporary legal custody of a deprived child to DFACS, to another public agency or private organization, or to an individual. Under OCGA § 15-11-58, DFACS efforts toward reunification or permanent placement are required in all cases in which the government, acting through a court, takes legal custody of a deprived child from the child's parents and awards temporary legal custody to other individuals or entities entitled to such custody under OCGA § 15-11-55.
Contrary to the position taken by the dissent, the language of OCGA § 15-11-58(a) stating that the section applies to "[a] court's order removing a child from the child's home" based upon a finding that "continuation in the home would be contrary to the welfare of the child" does not exclude the present case from the requirements of the statute. Even though the court's order awarding custody did not result in the child being physically removed from the petitioners' home, when referring to the deprived child's home, the statute does not mean the child's current physical residence, but the home of the child's legal custodian. Here, the child's home within the meaning of the statute was not where the child resided with the petitioners, but the home of the child's mother who had legal custody and the right to take the child from the petitioners at any time. In fact, the very reason the petitioners sought a court order for temporary legal custody was because the child's legal home was with his mother. Accordingly, there was a court order removing the child from the child's home within the meaning of § 15-11-58(a).
Under OCGA § 15-11-58(a), the juvenile court was required to
determine as a finding of fact whether reasonable efforts were made by the Division of Family and Children Services of the Department of Human Resources and any other appropriate agencies to preserve and reunify families prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from that child's home, and to make it possible for the child to return safely to the child's home.
The court made no such finding in the disposition portion of its order. Subsection (a)(2) of § 15-11-58 also requires that "reasonable efforts shall be made to preserve and reunify families ... [p]rior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and ... [t]o make it possible for a child to return safely to the child's home." These efforts are not required if the court finds that the parents have abandoned the child or have engaged in other abusive or criminal misconduct as set forth in § 15-11-58(a)(4). However, the juvenile court made no finding in this case that the mother had abandoned the child or engaged in any such misconduct. Nevertheless, the court's disposition order giving temporary legal custody of the child to the petitioners for two years refuses to require any efforts to reunify the mother with the child during that time and gives the petitioners total discretion over whether the mother will be allowed to have any contact with the child. Although the court's order leaves open the possibility of reunification by stating that, "[i]f it should appear that [the child] is no longer deprived, the court can consider a return of custody," it renders this possibility highly unlikely by leaving the mother without any right to have contact with the child. This is precisely the kind of case where, under the provisions of § 15-11-58, the professional resources of DFACS are needed to help determine if reunification is appropriate and, if so, to propose a reunification plan to the court.
The disposition portion of the juvenile court's order giving temporary legal custody of the child to the petitioners failed to comply with the requirements of OCGA § 15-11-58 because it did not contain necessary findings about reasonable efforts by DFACS or any other appropriate agencies to reunify the mother with the child and foreclosed any consideration of a DFACS plan to provide reunification services. In the Interest of W.P.H., 249 Ga.App. 890, 549 S.E.2d 513 (2001). Accordingly, the disposition portion of the order is reversed and the case remanded *519 for consideration of these requirements in the disposition of the child. Id.
Judgment affirmed in part, reversed in part and case remanded.
BLACKBURN, C.J., RUFFIN, ELDRIDGE, MILLER, ELLINGTON and PHIPPS, JJ., concur.
POPE, P.J., JOHNSON, P.J., SMITH, P.J., BARNES and MIKELL, JJ., concur in part and dissent in part.
SMITH, Presiding Judge, concurring in part and dissenting in part.
While I concur in Division 1 of the majority, I respectfully dissent as to Division 2. This is an unusual and anomalous case that should not be forced into the mold of the typical deprivation case under the auspices of the Department of Family & Children Services. To apply the provisions of OCGA § 15-11-58(a) for the first time at this late date will require a remand for full investigation, reunification efforts by DFACS in addition to those already undertaken by the juvenile court, reports by DFACS personnel, and additional hearings by the juvenile court. This unwieldy process runs exactly counter to the public policy of this court to expedite the determination of child custody cases, particularly since the child is already ten years old and fully understands and is harmed by continuing uncertainty regarding his future.
OCGA § 15-11-58(a) provides:
A court's order removing a child from the child's home shall be based upon a finding by that court that continuation in the home would be contrary to the welfare of the child. The court shall also determine as a finding of fact whether reasonable efforts were made by the Division of Family and Children Services of the Department of Human Resources [(DFACS)] and any other appropriate agencies to preserve and reunify families prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from that child's home, and to make it possible for the child to return safely to the child's home. Such findings shall also be made at every subsequent review of the court's order under this chapter.
This Code section contains 17 subsections providing in detail the efforts which DFACS must undertake to attempt reunification, including extensive case plans and reports to be made to the court and the judicial citizens review panel, if applicable.
This issue was extensively discussed by the parties at the hearing and addressed by the juvenile court in the order appealed from. Specifically, the juvenile court noted that this is a private petition for deprivation rather than one brought by a government child protective agency. The juvenile court determined that OCGA § 15-11-58 is "designed to pass due process muster when there is government intervention into custody matters," but that "nothing in this Code requires case plans, reviews, special findings or goals for deprived children who are not under the government's care."
Most importantly, this Code section by its terms applies only when a court has entered an order "removing a child from the child's home." OCGA § 15-11-58(a). The only home this now ten-year-old child has known since the age of two is that which he currently occupies. The mother began leaving J.W.K. with the paternal aunt when he was between the ages of one and two. When he was "[n]o more than two," she left him with the aunt "pretty much full-time." The mother was hospitalized for a drug problem and then lived with the aunt for six to eight weeks before moving in with her boyfriend and leaving J.W.K. behind. She visited the child only sporadically; the aunt testified that the mother had seen the child more in the four months between the two juvenile court hearings than "in the whole seven years I've had him put together." There was no court-ordered removal either in the temporary order or in the order appealed from. As the juvenile court correctly pointed out, J.W.K. was not placed in the aunt's home by any action of a state agency, but "by this family with no court intervention."
It is apparent from a reading of OCGA § 15-11-58 that it contemplates at every turn the involvement of DFACS in the investigation of the deprivation petition, in the filing of a case plan, and in the presentation *520 of regular, detailed reports to the court and the judicial citizens review panel. The Code section consistently refers to the placement of a child in foster care under the auspices of DFACS. See, e.g., OCGA § 15-11-58(c)(1) (referring to placement in foster care); (c)(3) (describing actions to be taken by DFACS in order for child to be returned home); (k) (ordering placement of deprived child in foster care under the supervision of DFACS). Such is not the case here, as the record contains no indication of the involvement of DFACS in any aspect of this matter.
In addition, the juvenile court recognized that orders bearing a "strong resemblance" to DFACS case plans are often employed by the courts when ruling on petitions made by persons other than a government child protective agency, when that is in the best interest of the child. In this case, the court did, in fact, consider the issues addressed by OCGA § 15-11-58, but rejected the imposition of a case plan or further reunification efforts as not in the best interest of the child. The evidence presented at the hearing supports that decision.
The temporary order explicitly provided for visitation and efforts at reunification. These efforts did not go well. J.W.K. was afraid of the mother's live-in boyfriend, the father of her other child, described by the juvenile court as "a local criminal of some renown," with multiple convictions for burglaries, sexual assaults, alcohol, drug, and DUI offenses, "and misdemeanors too numerous to mention herein."[3] Evidence was presented that the boyfriend drank and fought with the mother in the child's presence and that "they were forced to get out of a car on the side of the road and walk to someone's house. He was afraid for his physical safety." The mother defended her boyfriend, stating that "you shouldn't judge a person by his past."
The licensed professional counselor who examined J.W.K. recommended strongly against attempts to reunify J.W.K. with the mother, and she opined that "there's not enough therapy out there to take a 9-year-old child and place him in a new home and try to have him form new attachment relationships with other adults in a forced situation." The counselor testified that the child felt "forced" to visit his mother and feared that she and her boyfriend would kidnap him. The child's aunt testified that she had noticed negative changes in J.W.K.'s behavior after the court-ordered visitation. Finally, evidence was presented that the mother failed to abide by the provisions of the temporary order, including failing to follow the instructions for payment of child support and discussing custody and child support issues with J.W.K., in direct violation of the juvenile court's explicit prohibition of such talk due to the risk of upsetting the child. In view of this evidence that court-ordered attempts at reunification were not only unsuccessful but placed the child in some danger, this court should not order still further attempts at reunification under the auspices of DFACS and place J.W.K. back into a situation already known to be harmful. In the Interest of A.S.H., 239 Ga.App. 565, 571(1), 521 S.E.2d 604 (1999) (court not obligated to return children to parent and wait until they have actually been harmed).
Moreover, the juvenile court did not follow the guardian ad litem's recommendation to employ the new provisions of OCGA § 15-11-58(i) and grant extended custody until J.W.K.'s eighteenth birthday. Instead, it awarded temporary legal custody to the aunt and uncle for a period of two years. The court's order specifically anticipates that the mother may remedy the problems leading to the finding of deprivation and may reapply to the court at that time. Although the majority contends this prevents the mother from pursuing reunification, this would not be the case if she were willing to sever her association with a notorious criminal and provide a safe environment for J.W.K. during his visits with her. The juvenile court properly considered her apparent unwillingness to do so during earlier attempts at reunification.
In the process of considering whether a child is deprived within the meaning of OCGA § 15-11-2(8), and the disposition of the child under OCGA § 15-11-55, the juvenile *521 court will necessarily address many of the issues contemplated by OCGA § 15-11-58, as the court in fact did here. A mechanical compliance with the provisions of OCGA § 15-11-58 should not be required in cases in which the Department of Family and Children Services is not involved and no court has ordered the child removed from its home.
For this reason, In the Interest of W.P.H., 249 Ga.App. 890, 892(2), 549 S.E.2d 513 (2001), should be disapproved to the extent that it requires DFACS to participate in a custody case in such unusual circumstances. In W.P.H., we held that a finding of whether reasonable reunification efforts were made by DFACS "and any other appropriate agencies" is required by OCGA § 15-11-58(a) whenever a disposition order is entered "transferring temporary legal custody." Id. at 892(2), 549 S.E.2d 513. The text of the Code section, as noted above, actually requires such a finding of fact, not in an order transferring custody, but in an order "removing a child from the child's home." OCGA § 15-11-58(a). It is not clear from the text of the opinion in W.P.H. whether DFACS had any previous involvement in the investigation of the deprivation petition. Here, it is plain that DFACS had no such involvement, and remand for the purpose of such a finding of fact would be meaningless and futile. The record reflects that the child's interests were protected by a guardian ad litem, who investigated the case on behalf of the child, made recommendations to the court, and participated in the hearing. It does not appear that the juvenile court in W.P.H. had entered a previous custody order providing for attempts at reunification or that any evidence was presented or findings made that those attempts had been harmful and not in the best interest of the child, as was done here.
The juvenile court and J.W.K.'s guardian ad litem have already completed the process which DFACS would have to duplicate from its inception, following the numerous complex mandates of the statute. To involve DFACS in this litigation at this point is unnecessary, time-consuming, duplicative, and wasteful of the limited resources of the State that would be better spent in caring for children whose circumstances have not been already fully investigated by two sets of private litigants represented by counsel, a guardian ad litem, and the juvenile court. Meanwhile, the ten-year-old child must suffer continued uncertainty regarding his future as a new DFACS investigation wends its way through the system.
For these reasons, I respectfully dissent.
I am authorized to state that Presiding Judge POPE, Presiding Judge JOHNSON, Judge BARNES, and Judge MIKELL join in this opinion.
NOTES
[1] The Code concerning juvenile proceedings was revised and renumbered in 2000. Ga. L.2000, p. 20, § 1 et seq.
[2] The juvenile court's ultimate finding that the child was not abandoned but "would be deprived if removed from [the aunt and uncle] and placed with [the mother]" appears to conflict with the Supreme Court of Georgia's opinion in Lewis v. Winzenreid, 263 Ga. 459, 461-462, 435 S.E.2d 602 (1993), holding that an allegation of deprivation cannot be based upon the assertion that the child is not deprived but would be deprived if returned to the custody of the non-custodial parent. But we do not reach this issue because the parties are bound by the unappealed temporary custody order finding the child deprived. In the Interest of L.S.M., 236 Ga.App. 537, 538, 512 S.E.2d 397 (1999). The juvenile court also noted that a finding of deprivation was consented to by the parties. Finally, the mother did not enumerate this issue as error on appeal. "Matters not enumerated as error will not be considered on appeal." (Citations and punctuation omitted.) Smith v. State, 224 Ga.App. 819, 821(3), 481 S.E.2d 896 (1997).
[3] At the time of the hearing in July 2000, her boyfriend was again in jail for 120 days, on charges involving drugs and driving without a license and insurance.