683 S.E.2d 690 (2009)
In the Interest of C.L.C., a child.
No. A09A0798.
Court of Appeals of Georgia.
August 18, 2009.
*691 Fears, Lawrence & Turner, Kenneth G. Lawrence, Douglas R. Ballard, Jr., Jackson, for appellant.
Justin B. Grubbs, Griffin, for appellee.
PHIPPS, Judge.
The mother of ten-year-old C.L.C. appeals the juvenile court's order granting temporary custody of the boy to her ex-boyfriend and his wife following their petition to have the boy adjudicated deprived. In that order, the court denied the mother's motion to dismiss or, alternatively, to transfer the case for want of jurisdiction or proper venue. On appeal, the mother contends that the juvenile court erred in denying her motion and in finding the evidence sufficient to show the present deprivation of C.L.C. For reasons set forth below, we agree that the juvenile court lacked jurisdiction over the proceeding. Accordingly, we reverse.
For a period of time when C.L.C. was very young, his mother lived with one of the petitioners, who believed himself to be the boy's biological father. He subsequently learned that he was not C.L.C.'s biological father, but continued to act in the role of father to the boy.
The couple ended their relationship when C.L.C. was approximately 18 months old. At that time, the mother was using illegal drugs, resulting in periods during which she disappeared from home for up to a few weeks or was absent from home while at inpatient drug rehabilitation facilities or while incarcerated. During the mother's absences, her mother and ex-boyfriend cared for C.L.C. When the mother was at home, the ex-boyfriend had regular visitation with C.L.C. At some point, the ex-boyfriend sought legal advice on whether he could obtain custody of C.L.C., but he was informed that, as a non-parent, he likely could not.
C.L.C.'s mother and her ex-boyfriend subsequently married other people. After she married, C.L.C.'s mother decreased the amount of contact C.L.C. had with her ex-boyfriend and her mother. There is no evidence that C.L.C.'s mother disappeared from her home for any significant period of time after her marriage. Shortly before the deprivation petition was filed, however, she told her ex-boyfriend that she again had used illegal drugs.
At ten o'clock on the evening of October 1, 2008, C.L.C.'s grandmother went to C.L.C.'s house and discovered that C.L.C.'s mother was not at home. She awoke C.L.C. and his stepfather, and when the boy learned that his mother was not at home he began to cry. His grandmother offered to let the boy spend the night with her, and his stepfather agreed.
The following morning, C.L.C.'s mother called to check on the boy and asked her mother to take him to school. C.L.C.'s grandmother did not take him to school, however, because he did not feel well. Instead, she took him to the ex-boyfriend's house, where the two discussed their belief that something needed to "be done." Later that day, the ex-boyfriend sought and obtained from the juvenile court an ex parte emergency order placing C.L.C. in the custody of himself and his wife. The emergency order indicated that "the conduct, conditions or surroundings of the child [were] endangering the child's health and welfare." The court held a hearing the following day and issued an order finding probable cause that C.L.C. was deprived; finding that it was in the boy's best interest to be removed from his mother's home; and ordering that the boy remain in the custody of the ex-boyfriend and his wife pending the filing of a deprivation petition and an adjudicatory hearing thereon.
On October 6, the ex-boyfriend and his wife filed a deprivation petition alleging, in pertinent part, that C.L.C.'s mother had a "chronic, unrehabilitated substance abuse problem," that her drug use had caused the mother to leave C.L.C. in the care of others for periods of time, and that it was detrimental to the boy and rendered the mother unable to properly supervise or care for him. They also asked the court to consider them as the boy's temporary custodians.
On October 13, the court held an adjudicatory hearing on the deprivation petition. At this hearing, C.L.C.'s grandmother testified *692 that she was concerned about her daughter's present ability to parent and properly care for and supervise C.L.C., because she believed her daughter currently was abusing illegal drugs. She described her daughter's history of illegal drug use and disappearances from the home for periods of time, and she testified that her daughter had been unsuccessful in drug rehabilitation. She asserted that her daughter would vacillate between "doing good, church, relationship and everything" and using drugs.
C.L.C.'s grandmother testified that she asked for the boy to spend the night with her on October 1 because the boy was upset and worried about his mother, because she did not know when the mother would arrive home, and because she did not believe it was the responsibility of C.L.C.'s stepfather to care for the boy. She felt that it was imperative to remove C.L.C. from his house that night because "[y]ou could see in the last few weeks how he was acting. And he also told us that he didn't feel comfortable over there. He didn't say why, about fighting or anything like that. But that he ... just didn't want to stay there." Nevertheless, the grandmother did not think that her daughter's household was inappropriate for C.L.C. And she testified that nothing about the boy's condition on the evening of October 1 concerned her, other than the fact that he started crying.
The ex-boyfriend also testified at the hearing. He stated that C.L.C. had "been going through ... a lot of stress and just ... issues his whole life," because of the sporadic periods his mother spent in drug rehabilitation or jail. He testified that when the boy's grandmother brought the boy to his house on October 2 and said that the boy's mother had not been home the night before, he "didn't know whether it was going to be for one night or a week or she was going to be in jail. I didn't know what was going to happen."[1] He testified that past drug use had impaired the ability of C.L.C.'s mother to parent the boy, and that he also had concerns about her present ability to parent the boy because of drug use. He explained that the mother had
shown a ... history and can't ... get [herself] together.... I hope she can straighten herself out ... for [C.L.C.'s] sake. But ... she hadn't been able to do it and it's been ongoing for ten years.... I don't think it's fair to [C.L.C.].... [H]e needs to be in a stable relationship.... I know that I'm not the biological father, but he needs to have someone there that ... is constant. And that's where she's not here.
The ex-boyfriend described C.L.C.'s distress on past occasions when the boy's mother had disappeared or was in rehabilitation or prison. He admitted, however, that the last time she had disappeared from the home for a period of a week or more had been four to five years before. He testified that he "could only speculate" as to other ways in which the boy was affected by his mother's drug use. He further testified that the boy's mother previously had bought drugs with money the ex-boyfriend had provided for private school tuition, and he asserted that the boy's mother and stepfather had since withdrawn the boy from private school for financial reasons. The ex-boyfriend believed the mother was stealing money from her husband and otherwise using family resources to buy drugs. He testified, however, that he believed C.L.C.'s stepfather was a "pretty level-headed individual."
Following the adjudication hearing, C.L.C.'s mother moved the court to dismiss the petition for lack of jurisdiction or, alternately, to transfer the proceeding to the county in which she and her husband lived. The juvenile court denied this motion. The court further adjudicated C.L.C. deprived, finding that his mother "ha[d] a chronic, unrehabilitated substance abuse problem ... [that had] continued for approximately 10 years"; that she "continue[d] to use illegal drugs to the detriment of her child," causing the boy "moral and emotional harm"; that because of her drug use, she had disappeared "for days at [a] time, leaving the child in the care of others"; and that the grandmother *693 and ex-boyfriend believed the drug use caused C.L.C.'s mother to be unable to properly supervise or care for him. The court granted temporary custody of C.L.C. to the mother's ex-boyfriend and his wife.
1. C.L.C.'s mother contends that the juvenile court erred in exercising jurisdiction over the deprivation petition. "Jurisdiction is a question of law to which we apply a de novo standard of review."[2] The juvenile court has exclusive original jurisdiction over a child alleged to be deprived.[3] But "[i]f the petition fails to make valid allegations of deprivation as defined by OCGA § 15-11-2(8), the matter is not a deprivation proceeding within the jurisdiction of the juvenile court."[4] A deprivation petition that is actually a "disguised custody matter" is outside the subject matter jurisdiction of the juvenile court.[5] And we have held that "the juvenile courts should exercise great caution when entertaining deprivation proceedings brought by a non-parent to obtain custody from a parent," given the likelihood that the proceedings might be motivated by the person's desire to avoid a more stringent standard of proof applicable to a custody proceeding.[6]
We find that the deprivation petition here was a disguised custody matter over which the juvenile court had no jurisdiction. The petition was filed by nonparents, who specifically asked the court to remove C.L.C. from his mother's custody and place him in the petitioners' custody instead.[7] The ex-boyfriend admitted that he previously had explored other means of obtaining legal custody of C.L.C., but had determined that he likely would be unsuccessful.[8] And when asked whether he would be satisfied with the boy remaining in his mother's custody if the court could ensure that the mother was "cleaned up," the ex-boyfriend responded: "No .... [H]e's in my family as well.... [H]e's been in my family for ten years, so he's part of my family. And ... I don't think he needs to be there [with the mother] while she's getting her act together."
Moreover, the record shows that the petition did not contain valid allegations of deprivation under OCGA § 15-11-2. A deprived child is defined by OCGA § 15-11-2(8)(A), in pertinent part, as a child who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." And deprivation sufficient to authorize a parent's temporary loss of custody of a child must have "resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child."[9] The *694 petition must allege present deprivation, not past deprivation or potential future deprivation.[10]
The deprivation petition filed here focused largely upon allegations of past deprivation and potential future deprivation, specifically the mother's history of drug use and her previous disappearances related to that drug use. The petition's allegation of present deprivation, which was contested,[11] centered on the assertion that the mother still had an unrehabilitated drug problem. A parent's history of chronic, unrehabilitated abuse of drugs, with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child, can support a finding of present deprivation.[12] But nothing in the record demonstrated that present drug use by C.L.C.'s mother had a negative effect on him rising to the level of present deprivation.[13] The evidence demonstrated that the boy attended school, and there was no evidence that his basic physical or mental needs were going unmet. Concerning his emotional needs, C.L.C.'s grandmother and his mother's ex-boyfriend testified generally that the boy was upset and under stress, but when asked to describe specific effects of his mother's drug use upon the boy, they focused instead on the boy's reaction to his mother's past absences from the home. And they admitted that it had been four to five years since the mother's last lengthy "disappearance," that her household was not inappropriate for the boy, and that the boy's stepfather, who also lived in the household, was a "pretty level-headed individual."[14] Their testimony showed that the deprivation petition was not premised on any present deprivation but rather on a concern that C.L.C. might be deprived in the future if his mother were again to disappear from the home and a belief that the boy would be better off in the ex-boyfriend's custody.
"[M]erely using the word `deprivation' in a petition does not invoke the juvenile court's jurisdiction."[15] Where, as here, the record belies a petition's assertion that a child is presently deprived, and demonstrates instead that a third party is trying to seek custody of the child, then the juvenile court lacks jurisdiction over the petition.[16] We conclude from the circumstances of this case that the petition was not a valid deprivation petition but instead an attempt to obtain custody of C.L.C., and accordingly the juvenile court lacked jurisdiction over the petition. Thus, the court erred in denying the mother's motion to dismiss the petition.[17]
2. In light of our conclusion in Division *695 1,[18] we need not consider the remaining enumerated errors.
Judgment reversed.
SMITH, P.J., and BERNES, J., concur.
NOTES
[1] He was not aware that C.L.C.'s mother had called the boy's grandmother that morning to check on the boy. He testified, however, that this fact would not have made a difference in his decision to bring the deprivation petition.
[2] In the Interest of K.L.H., 281 Ga.App. 394, 395, 636 S.E.2d 117 (2006) (footnote omitted).
[3] See OCGA § 15-11-28(a)(1)(C).
[4] In the Interest of K.R.S., 253 Ga.App. 678, 679(1), 560 S.E.2d 292 (2002) (citations omitted).
[5] In re M.C.J., 271 Ga. 546, 548, 523 S.E.2d 6 (1999); In the Interest of D.T., 284 Ga.App. 336, 339-340(2), 643 S.E.2d 842 (2007).
[6] K.R.S., supra at 679, 560 S.E.2d 292 (citation and punctuation omitted); see In the Interest of B.C.P., 229 Ga.App. 111, 113-114(1), 493 S.E.2d 258 (1997) (holding juvenile court lacked jurisdiction over a grandparent's deprivation petition, where petition was a "transparent attempt to use the juvenile court system to seek custody of the child"). See generally Clark v. Wade, 273 Ga. 587, 599(V), 544 S.E.2d 99 (2001) (third parties seeking custody of child from parent must prove by clear and convincing evidence that child will suffer physical or emotional harm if biological parent retained custody).
[7] See In the Interest of J.E.T., 269 Ga.App. 567, 569-570(1), 604 S.E.2d 623 (2004) (finding petition seeking termination of father's right to custody and asking for award of custody to another "proper person," which could include petitioner, to be disguised custody matter outside juvenile court's jurisdiction).
[8] Compare K.L.H., supra at 396, 636 S.E.2d 117 (noting lack of evidence that petitioner would have sought custody but for child's present deprivation or that parties had engaged in previous custody disputes over child).
[9] In the Interest of C.R., 292 Ga.App. 346, 351, 665 S.E.2d 39 (2008) (citation and punctuation omitted).
[10] See In the Interest of T.P., 291 Ga.App. 83, 85-86(3), 661 S.E.2d 211 (2008) (order temporarily transferring custody of child must be grounded on finding that child is at present time deprived); K.R.S., supra at 679, 560 S.E.2d 292 (juvenile courts have jurisdiction over petition concerning child alleged to be deprived, not child who allegedly has been deprived or allegedly will be deprived).
[11] Compare D.T., supra at 340, 643 S.E.2d 842 (finding deprivation proceeding was not disguised custody matter where there were unchallenged allegations of deprivation); K.L.H., supra at 396-397, 636 S.E.2d 117 (same).
[12] See In the Interest of J.C., 264 Ga.App. 598, 601(2), 591 S.E.2d 475 (2003) (citing OCGA § 15-11-94(b)(4)(B)(ii)); see also C.R., supra at 350(1)(a), 665 S.E.2d 39 (affirming finding of deprivation where mother had history of drug abuse which continued after child was born and during mother's care of child).
[13] See In the Interest of M.L.C., 249 Ga.App. 435, 439(2), 548 S.E.2d 137 (2001) (reversing finding of deprivation, premised on parents' drug use, where evidence did not show that any present use resulted in child's basic physical, mental or emotional needs going unmet).
[14] See generally Trotter v. Ashbaugh, 156 Ga. App. 130, 132(2), 274 S.E.2d 127 (1980) (stepparent, under certain circumstances, is recognized as in loco parentis to the child, "assum[ing] the status and obligation of a parent without formal adoption").
[15] B.C.P., supra at 112-113, 493 S.E.2d 258.
[16] See id. at 113-114, 493 S.E.2d 258 (finding grandparent's petition alleging that child was deprived was custody matter in disguise where other record evidence refuted the allegation).
[17] See K.R.S., supra at 681, 560 S.E.2d 292.
[18] Supra.