A01A1704. IN THE INTEREST OF A. A., a child.
(560 SE2d 763)

SMITH, Presiding Judge.

Following a hearing, a juvenile court adjudicated A. A. delinquent, finding that A. A. committed acts which, if committed by an adult, would have constituted aggravated assault. A. A. was sentenced to 90 days in a "Short Term Program," but this sentence of confinement was suspended provided that A. A. successfully completed a year's probation. A. A. appeals, challenging the sufficiency of the evidence. She also contends that she was erroneously denied the opportunity to mediate her case and was denied due process and equal protection. Because the evidence supports the trial court's findings, and because we conclude that A. A. waived her constitutional

arguments and any argument concerning the failure to mediate, we affirm.

1. In considering a challenge to the sufficiency of the evidence supporting a juvenile court's adjudication of delinquency, we construe the evidence and all inferences drawn therefrom in favor of the juvenile court's decision to determine if a rational trier of fact could have found, beyond a reasonable doubt, that the juvenile committed the act charged. *In the Interest of S. P.*, 240 Ga. App. 827 (525 SE2d 403) (1999). Viewed in this light, the record shows that M. P. and S. C. were threatened with a knife by A. A., age 12. M. P., age ten, testified that he and S. C. approached A. A. to talk with her, "and she pulled out this knife and stuck it a little bit to my throat . . . and said she'll cut my throat. She threatened [S. C.] She got him in the middle of the head with the knife." She also told the boys she was "not playing around." S. C. similarly testified that A. A. "stuck a knife at us" and threatened "to throw the knife at" him. He described the weapon as a butcher knife.

A. A. testified that she acted in self-defense. She stated that she was sitting next to her mailbox talking on the telephone when she was struck in the head by a rock. She saw the boys she believed threw the rock run away in opposite directions. After staying on the telephone "a long time," and after her mother returned home from work, rested, prepared dinner, and left the house again, A. A. retrieved a knife from her kitchen as "protection" or "self defense" and left her home. She found one of the boys she had seen earlier and asked him who hit her. He replied that the other boy with him did it. A. A. testified that M. P. and S. C. approached her, cursing and asking if she wanted to fight. She stated she thought they were "going to do something. So I just pulled the knife out and told them to back up and leave me alone, I'm not in the mood right now."

The victims' testimony, although in conflict with that of A. A., was sufficient to authorize the finding that through A. A.'s threats and use of the knife, the victims were placed in fear of immediately receiving bodily harm as required by OCGA § 16-5-21. Sufficient evidence was presented to support the "adjudication of delinquency for having committed the designated felony act of aggravated assault." *In the Interest of T. S.*, 211 Ga. App. 46, 47 (2) (438 SE2d 159) (1993).

2. A. A. argues that the juvenile court violated the Uniform Dispute Resolution Rules promulgated by the Supreme Court of Georgia's Commission on Alternative Dispute Resolution. She maintains that but for this violation and the resulting failure to mediate her case, she would not have been subject to adjudication. But because we conclude that A. A. failed to raise this issue below, the issue has been waived and will not be considered on appellate review.

It appears that A. A.'s adjudication hearing was continued twice

so that A. A., the victims, and all of the children's parents could pursue mediation. During one hearing in which the possibility of mediation was discussed, the trial court explained the mediation process to the parents and the differences between mediation and adjudication. The victims' parents indicated a willingness to mediate, and the court instructed the parents to contact the mediator and discuss dates on which to have the mediation. Nearly two months later, the case came on for adjudication, as it was never mediated. Before testimony was given during that hearing, the mediator explained that she had scheduled the mediation "with the victims and then the mama decided she didn't want to pay for it and that I was violating all her civil rights. Then she decided later that she wanted to come back and do it and one of the victim's phones had been disconnected and so I couldn't get back in touch with them. So that is why it hasn't been mediated." The prosecutor added that "[w]hen I talked with the victims they said just have the hearing," and the mediator said that they "had tried and tried and tried." No objection was interposed at that time by appointed defense counsel, and the adjudication hearing proceeded. After the court heard testimony and determined that A. A. had committed a delinquent act as charged in the petition, A. A.'s mother was permitted to speak to the court. She said that she

> would like to know why this trial took place when I did try everything. I have proof that I tried to reach [the mediator] and [defense counsel] to go ahead with the mediation and the mediation did not take place not on my behalf. The first time the mediation date was set I didn't have all the money and I explained to [defense counsel] that I had half of the money and could I work a payment plan out with [the mediator]. I was never informed if they wanted to work a payment out and the next thing I know we had been contacted to come to court.

The mother also indicated her dissatisfaction with defense counsel's representation. The court replied that defense counsel had done "an exceptional job in the trying of the case and presentation of the evidence" and explained to the mother that if she was not satisfied, she could employ a lawyer to represent A. A. at her own expense.

Trial counsel subsequently filed a motion to withdraw, explaining that the mother had "expressed her displeasure and disapproval" of his defense and that he had been contacted at the mother's behest by outside agencies seeking information about the case and justification of his representation of A. A. For these reasons, he believed himself to be in an adversarial relationship with the parties.

The juvenile court allowed withdrawal, granting the motion dur-

ing a hearing occurring approximately one month after the adjudication hearing, and new counsel entered an appearance. During that hearing, the trial court asked the mother her income. She began to answer that her income was difficult to determine and tried to estimate it, but the juvenile court interrupted her and stated that she would be required to fill out an affidavit of financial status and provide information so that the court could determine whether she qualified for appointed counsel. The court explained that although counsel had been appointed to represent A. A. during the adjudication proceedings, the court had not yet determined whether her parents would be required to reimburse the county to pay for the expenses. The court asked that the financial affidavit be filed within the week of December 18, 2000. A month later, A. A.'s dispositional hearing was held. The failure to have the case mediated was never mentioned or placed into issue by new counsel at either of these hearings. We note that the mother's financial affidavit was not submitted in December, as directed by the juvenile court, but instead was filed February 2, 2001. The juvenile court then found that A. A. was indigent and entitled to appointed counsel.

On appeal, A. A. argues that the events here were simply a neighborhood dispute among children and that the parties should have been allowed to pursue court-annexed, court-referred mediation to its conclusion but that because she and her mother were indigent, her case was not mediated. Citing to the Uniform Rules for Dispute Resolution Programs, A. A. argues that the juvenile court was required to determine, among other things, and before referring the case to mediation, whether the parties were "able to compensate the neutral if compensation was required." She points out that this did not occur and that the court "failed to determine whether the alternative dispute resolution service should have been provided free of charge if they were found to be indigent." A. A. also cites "Alternative Dispute Resolution Rules," arguing that the juvenile court was required to make " 'ADR service free of charge to indigent parties.' "

We do not agree with A. A. that reversal is required under the circumstances of this case. After the mediator and prosecutor relayed information to the juvenile court concerning their efforts to mediate the case, A. A.'s counsel interposed no objection, and the adjudication hearing proceeded. Although her mother did state at the conclusion of the adjudication hearing that she had previously expressed a desire to have the mediation and had attempted to pay for the proceedings, A. A. was represented at the hearing by counsel whom the trial court found to be competent and who never made the failure to mediate an issue, either before the adjudication hearing, as discussed above, or afterward. Furthermore, although A. A.'s present counsel argues extensively on appeal that the trial court erroneously

failed to require mediation based on A. A.'s failure to pay, after present counsel entered an appearance, the failure to mediate was never put in issue for the juvenile court's consideration below. "As this is a court for the correction of errors, we will not consider any issues raised on appeal that were not raised and preserved in the trial court." (Citations and punctuation omitted.) *Harris v. State*, 234 Ga. App. 126, 128 (2) (505 SE2d 49) (1998).

In addition, the record does not show that A. A.'s failure to pay was the sole reason the case did not proceed to mediation. The mediator's pre-trial statement to the trial court demonstrated that A. A.'s mother had not been fully cooperative. As discussed above, according to the mediator, in addition to deciding that "she didn't want to pay" for the mediation, the mother also felt that the mediator "was violating all her civil rights." And although the mother apparently changed her mind, the mediator was unable to contact one of the victims in order to schedule mediation. The record does not show that these facts have been disputed. While the mother argued at the conclusion of the adjudication hearing that she had "proof" of her efforts of pursuing mediation, no such "proof" was ever proffered to the trial court. Finally, according to the prosecutor, the victims had decided to "just have the hearing." Because the record does not show that the issue was appropriately raised below, and because other circumstances obviously precluded mediation, we find no basis for reversal.

3. A. A. argues that the failure to follow the applicable rules of alternative dispute resolution deprived her of due process and equal protection under the federal and state constitutions. Again, however, these issues were not raised timely below. "A constitutional issue cannot be considered when asserted for the first time on appeal but must be clearly raised in the trial court and distinctly ruled upon there. Contentions regarding a constitutional issue which were not made below are thus not passed upon here." (Citations and punctuation omitted.) *Martin v. State*, 195 Ga. App. 548-549 (1) (394 SE2d 551) (1990).

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED FEBRUARY 21, 2002.

*Alexander T. Rundlet*, for appellant.
*Tommy K. Floyd, District Attorney, Mary Evans-Battle, Assistant District Attorney*, for appellee.