663 S.E.2d 411 (2008)
In the Interest of E.J., a child.
No. A08A0627.
Court of Appeals of Georgia.
June 18, 2008.
*412 Reginald Charles Martin, Decatur, for Appellant.
John Thomas Durden Jr., Dist. Atty., for Appellee.
ANDREWS, Judge.
The Juvenile Courts of Evans County and Tattnall County adjudicated E.J., a fourteen-year-old female, delinquent for acts which, if committed by an adult, would constitute the crimes of burglary, theft by taking  vehicle (three acts), and obstruction of an officer. Following the dispositional hearing, E.J. was sentenced pursuant to OCGA § 15-11-63, which classifies certain offenses as "designated felony" acts.[1] E.J. appeals,[2] challenging the sufficiency of the evidence, the voluntariness of her statements, and her restrictive custody pursuant to OCGA § 15-11-63. Finding no error, we affirm.
1. We consider first E.J.'s second, fourth, fifth, and sixth enumerations, which challenge the sufficiency of the evidence.
In reviewing E.J.'s challenge to the sufficiency of the evidence, "we construe the evidence and all inferences drawn therefrom in favor of the juvenile court's decision to determine if a rational trier of fact could have found, beyond a reasonable doubt, that [E.J.] committed the act[s] charged." In the Interest of A.A., 253 Ga.App. 858, 859(1), 560 S.E.2d 763 (2002).
In Tattnall County Case No. 132-2007-JR-036, E.J. was charged with the delinquent act of theft by taking of the vehicle of Jose Sanchez. The evidence was that, on February 13, 2007, Sanchez, 22 years old, met E.J. for the first time. Sanchez had been drinking heavily and was intoxicated. E.J. asked him to drop her off in Claxton, but he said he was too intoxicated. Because he lived nearby, Sanchez told E.J. she could go there and chill out and she agreed. E.J. drove Sanchez' car to his residence, with his permission, and she stayed the night. On the morning of February 14, Sanchez woke around 9:00, ironed his clothes, and showered. While he was ironing, E.J. was still asleep. While in the shower, he heard the stereo system in his car playing. He jumped out of the shower and noticed that his cell phone and a medallion and necklace were missing. Also, E.J. was no longer in the residence and his car was gone. He later found the car by the side of the highway, stripped of the stereo system and no longer driveable. He contacted the Tattnall County Sheriff's Office and filed a report. Although he had allowed E.J. to drive the car the night before because of his intoxication, he did not give her permission to drive it the next morning.
In Evans County Case No. 054-07HR-016, E.J. was charged with the delinquent act of taking a van from McCord's Cleaners in Claxton on February 16, 2007. Allison McCord, daughter of the owner of the cleaners, was working there on February 16 and became aware that one of the vans used in the business was missing. Earlier, she had seen a young woman and a young man walking up and down the street and sitting on a bench in front of the cleaners. The keys had been left in the van by McCord. The next day, she was driving down Highway 301 with her fiancé when she saw the van coming from Statesboro. The van pulled into La Casa de Carmen trailer park and McCord followed it *413 all the way to the end of the trailer park where the van pulled into a lot with a vacant double-wide trailer. Although McCord attempted to block the van, E.J. spun the van out and got around her. McCord continued to follow the van until it stopped and E.J. and a young man, later identified as Pecina, jumped out and ran across a field. McCord and her fiancé took possession of the van.
Shortly thereafter, Lynn Sapp[3] and her husband John left home and went to town to purchase groceries, leaving John's 1999 Astro van, which he used in his work, parked in a shed. The Sapp home is located across a field and small branch from the trailer park. While driving back from town, the Sapps passed the work van coming from their house. Thinking their son was driving the van, which was full of Mr. Sapp's work tools, Mr. Sapp called him on his cell phone. The son was at his home and had seen the van earlier parked in the shed. Police were called and the van was reported stolen. Upon returning to their house, the Sapps found a door had been pried open and a window screen removed. Five guns and jewelry were missing from the house. The next day, the van was pulled from the river, totaled, covered in obscene graffiti, and missing all of the tools. On February 17, E.J. gave a handwritten statement to Evans County Sergeant Hogue in which she admitted entering the Sapp home and taking the van.
On February 18, officers received information about the location of E.J. and Pecina and went to arrest them. Both E.J. and Pecina jumped out a window of the house and ran. A search ensued and the two were eventually found in the back seat of a car in a church parking lot. Evans County Sheriff's Deputy Deloach managed to get one handcuff on E.J., but she managed to back out of the car on the other side and came out swinging the handcuff at Evans County Deputy Tibbins.
The evidence of burglary, three counts of theft of a vehicle, and obstruction of an officer was legally sufficient. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
2. E.J.'s first and third enumerations of error challenge the admission into evidence of statements made by E.J. to officers in both the Evans County and Tattnall County cases.
The admissibility of statements by juveniles depends upon whether, under the totality of the circumstances, there was a knowing and intelligent waiver of constitutional rights. Riley v. State, 237 Ga. 124, 128, 226 S.E.2d 922 (1976). The burden is on the state to demonstrate that the juvenile understood and waived those rights. The analysis involves the application of a nine part test. Id. The factors a court considers include: "The age of the accused; the education of the accused; the knowledge of the accused as to the substance of the charge and nature of his rights to consult with an attorney; whether the accused was held incommunicado or allowed to consult with relatives or an attorney; whether the accused was interrogated before or after formal charges had been filed; methods used in interrogation; length of interrogation; whether accused refused to voluntarily give statements on prior occasions; and whether accused repudiated an extrajudicial statement at a later date." Henry v. State, 264 Ga. 861, 862, 452 S.E.2d 505 (1995), applying Riley, supra.
McKoon v. State, 266 Ga. 149, 150, 465 S.E.2d 272 (1996).
On February 18, Claxton Police Officer Rivers, who had participated in the recovery of the McCord Cleaners van, went to the Regional Youth Detention Center(RYDC) in Claxton to interview E.J. Rivers had with him Tracy Gonzalez, who spoke Spanish, to ensure that E.J. understood what was being said. Also present was E.J.'s mother. Rivers read the Miranda warnings to E.J. from the pocket card he carried in his wallet. E.J. did not ask to speak with an attorney or indicate any hesitation about giving her statement. Gonzalez wrote down what E.J. said regarding the theft of the McCord van. The statement was then read back to E.J., *414 signed by her, and witnessed by Rivers and Gonzalez.
On February 19, Tattnall County Sheriff's Lieutenant Keyfauver went to the RYDC to speak to E.J. E.J. was accompanied by Cynthia Joyce, an employee of the RYDC. Keyfauver did not attempt to contact E.J.'s parents. He did individually read each of the rights contained on a Juvenile Miranda Waiver form to her. E.J. signed the form, as did Keyfauver and Joyce. During the interview, E.J. expressed no difficulty in communicating with Keyfauver. E.J. gave an oral statement to Keyfauver, acknowledging that she took Sanchez' Dodge Neon, but stated that she had his permission to do so. She said she drove around until she got lost and the car developed mechanical problems and she left it beside Highway 301. She denied any knowledge of any missing items.
E.J. was 14 years old at the time of both interviews. Although no specific grade completed was mentioned by E.J., it is not contradicted that, after the written form was read to her, E.J. had no difficulty in reading and understanding it herself and she signed it. She also verbally indicated to Officer Rivers that she understood his oral warnings. Regarding knowledge of the charges, E.J. did not testify during the hearing on the statements' admissibility, but she was informed of the nature of the charges and her constitutional rights before giving statements. There is no evidence she was prevented from contacting a relative or anyone else, and her mother was present for the first interview. Both interviews occurred shortly after E.J. was taken into custody and no formal charges had yet been filed. There is nothing to suggest that any improper means of interrogation were used in either interview. Although no length of time was given for the first interview, E.J.'s statement was brief. The interview the next day with Keyfauver lasted 30 to 45 minutes. Nothing in the record indicates E.J. refused to give a statement at any time nor did she repudiate any statement which she gave.[4]
"On appeal, the standard of review is whether the trial court was clearly erroneous in its factual findings on the admissibility of [E.J.'s] statement[s]." Henry v. State, supra at 862(2), 452 S.E.2d 505. The trial court applied the appropriate test, and the evidence supported its factual findings regarding both statements. We thus find no error in the admission of either statement. See McKoon v. State, supra at 151(2), 465 S.E.2d 272 ("The absence of a parent is just one of nine factors that this Court considers.").
Therefore, there was no error in the admission of the two statements.
3. Finally, in her seventh enumeration, E.J. contests her disposition as a "designated felon." This argument, however, is based solely on the claimed insufficiency of the evidence regarding the three vehicle thefts. As stated above in Division 1, we have found the evidence sufficient and there was no error in the disposition imposed. OCGA § 15-11-63(b).
Judgment affirmed.
RUFFIN, P.J., and BERNES, J., concur.
NOTES
[1] OCGA § 15-11-63(a)(2)(E) defines a "designated felony act" as an act which constitutes "a second or subsequent violation of Code Sections 16-8-2 through 16-8-9, relating to theft, if the property which was the subject of the theft was a motor vehicle."
[2] This matter was previously before us in Case No. A07A2279, which was dismissed for failure to file appellant's brief. The Juvenile Courts of Evans County and Tattnall County granted out-of-time appeals in both cases. The cases were consolidated by the juvenile courts for purposes of appeal.
[3] In Evans County Case No. 054-07JR-020, E.J. is charged with delinquent acts of burglary of the Sapp home, theft of Mr. Sapp's van, and obstruction of an officer.
[4] E.J. does not contest the statement given on February 17 to Evans County Sergeant Hogue regarding the theft of the Sapp van. She hand wrote and signed this statement.