709 S.E.2d 883 (2011)
309 Ga. App. 9
In the Interest of T.D. et al., children.
No. A10A2020.
Court of Appeals of Georgia.
March 30, 2011.
*884 Frederick Scott Islieb, Lawrenceville, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Kathryn Ann Fox, Asst. Atty. Gen., Daniel C. Thomas, for appellee.
PHIPPS, Presiding Judge.
The mother of T.D., E.C., T.C., and A.D. appeals from the juvenile court's orders finding the children deprived, extending temporary custody with the Department of Family and Children Services (DFCS), and denying the mother's motions for return of custody. For the reasons that follow, we reverse the judgments as to T.D., E.C., and T.C., and vacate the judgment and remand the case with direction as to A.D.
On appeal from a juvenile court's order finding deprivation or extending temporary custody of a child with DFCS, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived.[1]
*885 Viewed in the light most favorable to the juvenile court's findings, the record shows that on December 10, 2008, the mother filed a police report alleging that her husband (the father of E.C. and T.C. and the stepfather of T.D. and A.D.) had slapped her and hit her in the face. At the time, T.C. and A.D. were already in the custody of DFCS based on findings of neglect (specifically, the parents' failure to provide adequate housing and for the children's medical needs, and the father's incarceration); T.D. and E.C. were not in DFCS's custody, as the mother had placed them with relatives pursuant to temporary letters of guardianship.
In February 2009 (nunc pro tunc to January 22, 2009), the juvenile court issued an order in A.D.'s deprivation case prohibiting the mother and her husband (hereafter, the father) from having any contact with each other, and prohibiting the father from having any contact with A.D. or anyone in the mother's family, until the father proved he had completed an approved course in domestic violence and counseling. The court continued temporary custody of A.D. with DFCS based on what the court termed "unresolved domestic violence issues" and A.D.'s need to complete residential treatment that the mother was unable to provide for mental, emotional and behavioral problems.
In another February 2009 order (nunc pro tunc to January 22, 2009), the court ordered the return of T.C. to the mother's custody based on findings that the mother had essentially completed her case plan requirements but for "resolving her domestic violence issues." The court noted that the father had been arrested on or about December 17, 2008, released on December 23, 2008 and re-arrested on January 9, 2009, and that he remained incarcerated on a charge of probation violation stemming from the incident of family violence on December 10, 2008.
In May 2009, T.D., E.C., and T.C. came into the emergency care of DFCS based on allegations that the mother had "failed to protect [the children] from exposure to domestic violence" between the parents.[2] No specific incidents were cited in the shelter care order. The juvenile court found that the children needed protection because the mother had reestablished contact with the father upon his release from jail and allowed him to have contact with the children despite the no-contact order; the father had not completed the required course work or counseling.
Deprivation petitions were filed as to these three children in May 2009, and again as to A.D. in August. 2009 (A.D. had been in DFCS's temporary custody since 2007.) Regarding all four children, the petitions were based on unspecified allegations of exposure to domestic violence between the parents. As to A.D., the petition additionally alleged that A.D. required residential treatment for unspecified mental, emotional and behavioral health problems that the mother was unable to provide, and that the mother was unable to provide proper parental discipline, care and control of A.D.
In August 2009 (nunc pro tunc to July 9, 2009), the court entered orders finding T.D., E.C., and T.C. deprived and awarding temporary custody to DFCS based on the mother's failure to obtain stable employment and adequate housing, and her failure to protect the children from domestic violence. The court noted that the father had been incarcerated on charges related to "issues of domestic violence," but did not cite to any specific incidents or charges.
In May 2009 and November 2009, DFCS developed reunification case plans as to all four children requiring the mother to, among other things, not have contact with the father without a therapist's approval; attend domestic violence counseling; obtain and maintain a source of income and safe, stable housing; complete parenting classes; and pay child support. The court approved the plans.
In an August 2009 judicial review order pertaining to A.D., the court stated, inter *886 alia, that temporary custody would be continued with DFCS because, along with the unresolved domestic violence issues, A.D. needed "extensive services" and "intensive supervision" that the mother was unable to provide, though it did not specify what his needs were or why the mother was unable to meet those needs.
In March 2010, DFCS filed a motion to extend its custody of T.D., E.C., and T.C. for one year and for judicial review of its permanency plan (concurrently for reunification with the parent and nonreunification and adoption). The same month, the mother filed motions for the court to return custody of all four children. An evidentiary hearing was held in April 2010.
On May 12, 2010 (nunc pro tunc to April 22, 2010), the juvenile court entered orders finding that T.D., E.C., and T.C. continued to be deprived, granting DFCS's motions to extend custody as to those three children, finding that returning A.D. to the mother's home would be contrary to his welfare, and denying the mother's motions for return of custody as to all four children. The court found that the mother had complied with the case plan for reunification by completing parenting classes, maintaining housing and employment, and completing a domestic violence and conflict resolution course. However, the court found that the mother had failed to pay child support, "failed to show her understanding of her domestic violence issues," and was "not taking realistic steps to address prevention of future occurrences." The court cited testimony from a therapist that the mother had "a history of domestic violence relationships"[3] and tended to minimize her domestic violence issues. The court stated further that the mother had not developed a safety plan for future occurrences of domestic violence until the day before the hearing, and opined that the code word ("love") that the mother had selected to communicate to the children possible impending violence so they would contact law enforcement was problematic. The court noted that the father was a convicted felon with "a history of domestic violence" against the mother (though the court did not elaborate) and that in April 2010 witnesses saw the father with the mother at a yard sale and speaking to two of the children in a park during the children's scheduled visitation with the mother; the court also noted that the mother had been found in contempt of court for having had contact with the father and allowing the children to have contact with him.[4] In the court's opinion, the mother had "gone through the motions of attending domestic violence courses and completing her case plan," but she "fail[ed] to incorporate what she ... learned from her counseling and course work." The court concluded that the mother had not sufficiently complied with the case plan to permit reunification with T.D., E.C. and T.C. at that time. Regarding A.D., the court stated that returning him to the home would be contrary to his welfare because of domestic violence issues, that A.D.'s placement in a residential treatment program at the time was "appropriate for [his] needs," and that, therefore, custody with DFCS would continue.
1. In several related assertions of error, the mother contends that the evidence was insufficient to find that the children continued to be deprived and that custody should therefore be extended with DFCS.
A deprived child is defined by OCGA § 15-11-2(8)(A), in pertinent part, as a child who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals. And deprivation sufficient to authorize a parent's temporary loss of custody of a child must have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. The petition must allege present deprivation, not past *887 deprivation or potential future deprivation.[5]
Where, as here, the children were in DFCS's custody, the correct inquiry for the juvenile court was whether the children would be deprived if returned to the parent as of the date of the hearing.[6] An extension of custody with DFCS must be necessary to accomplish the purposes of the order extended.[7]
In this case, the evidence was not sufficient to permit a rational trier of fact to find that the children, if returned to their mother as of the date of the hearing, would be without proper parental care or control necessary for their physical, mental or emotional health, and thus would be deprived. The mother had completed the required counseling and course work, was employed, and had set up a suitable home for herself and the children. That she on occasion had contact with the father, permitted the father to have contact with the children, failed to develop a safety plan until the day before the hearing and failed to come up with an appropriate code word to signal danger, did not establish that she would fail to protect the children from exposure to domestic violence and, thus, cause them to be deprived. The court focused on the fact that the mother maintained contact with the father despite past violence in their relationship; notably, it is not clear from the record whether there were incidents of domestic violence other than the one specified or whether the children were exposed to any incidents of domestic violence. And nothing in the record demonstrated that the present acts of the mother rose to the level of deprivation of the children. The finding of deprivation was not premised on any ongoing deprivation, but rather a concern that the children might be deprived in the future if their mother did not have an acceptable plan to prevent future occurrences of domestic violence.[8] Thus, there was not clear and convincing evidence authorizing a finding that the children continued to be deprived due to exposure to domestic violence.[9] Under the circumstances, the juvenile court erred in finding the children deprived, and in extending custody with DFCS rather than returning custody to the mother.[10]
2. In its order denying the mother's motion to return custody of A.D. and instead continuing custody with DFCS, the juvenile court mentioned, in addition to the domestic violence issue addressed in Division 1, that A.D.'s continued placement in a residential treatment program "is appropriate for [his] needs" and that it "would be contrary to the welfare of the child" to return him to his mother's home. But the court did not include any findings of fact as to A.D.'s needs (at the time of the hearing or otherwise), or any findings of fact as to why those needs would not be met if he were returned to his mother's custody. If the record contained such evidence, the juvenile court did not cite to or rely on such evidence in reaching its conclusion.[11] The juvenile court was required to set forth the findings of fact upon which it based its finding of deprivation.[12] As the juvenile court failed to do so regarding A.D.'s needs and the mother's ability to meet those needs, we remand the case and direct the court to vacate the judgment as to *888 A.D., prepare appropriate findings of fact, and enter a new judgment.[13]
Judgment reversed in part and vacated in part, and case remanded with direction.
McFADDEN, J., concurs.
MILLER, P.J., concurs in the judgment only.
NOTES
[1] In the Interest of Q.A., 306 Ga.App. 386, 388(2), 702 S.E.2d 701 (2010) (affirming order extending custody with DFCS where supported by clear and convincing evidence); In the Interest of N.H., 296 Ga.App. 258(1), 674 S.E.2d 126 (2009) (appellate courts review order finding deprivation in light most favorable to juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that child was deprived); In the Interest of Q.H., 291 Ga.App. 598, 662 S.E.2d 358 (2008) (in appeal from order extending temporary custody with DFCS pursuant to deprivation petition, court views evidence in light most favorable to juvenile court's findings).
[2] In May 2009, T.D. was twelve years old, E.C. was eight years old, T.C. was three years old, and A.D. was fourteen years old.
[3] The therapist's testimony was: "[The mother] had other domestic violence relationships or at least one that I'm aware of because she sought shelter in a local domestic violence program."
[4] A judicial review order states that the mother was found in contempt of the February 2009 order in August 2009, though it does not indicate the date(s) of the violation(s).
[5] In the Interest of C.L.C., 299 Ga.App. 729, 733-734(1), 683 S.E.2d 690 (2009) (punctuation and footnotes omitted).
[6] See In the Interest of C.H., 305 Ga.App. 549, 559(2)(a), 700 S.E.2d 203 (2010).
[7] See OCGA § 15-11-58(n)(3); In the Interest of J.P., 280 Ga.App. 100, 105(2), 633 S.E.2d 442 (2006).
[8] See In the Interest of C.L.C., supra at 735(1), 683 S.E.2d 690.
[9] See In the Interest of J.P., supra; In the Interest of C.F., 266 Ga.App. 325, 328(1), 596 S.E.2d 781 (2004); In the Interest of M.L.C., 249 Ga.App. 435, 439, 548 S.E.2d 137 (2001).
[10] In the Interest of M.L.C., supra.
[11] See In the Interest of D.S., 212 Ga.App. 203, 204, 441 S.E.2d 412 (1994), overruled on other grounds, In the Interest of J.P., 267 Ga. 492, 493, 480 S.E.2d 8 (1997).
[12] In the Interest of C.D.E., 248 Ga.App. 756, 766(2), 546 S.E.2d 837 (2001); In the Interest of J.B., 241 Ga.App. 679, 680(1), 527 S.E.2d 275 (1999); In the Interest of D.L.G., 212 Ga.App. 353(1), 442 S.E.2d 11 (1994).
[13] See In the Interest of J.B., supra.