**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 9, 2015**

# In the Court of Appeals of Georgia

A15A0295. IN THE INTEREST OF L. R. M., a child.

MILLER, Judge.

After the juvenile court found L. R. M. deprived, the paternal grandmother filed a motion to intervene seeking custody of and visitation with the child. The juvenile court denied the grandmother's motion to intervene, and she appeals, contending that the juvenile court erred in denying her motion because she had an absolute right to intervene under OCGA § 19-7-3 (b) (1), the Grandparent Visitation Statute. The grandmother also contends that the trial court erred in denying her motion on the merits because it applied the wrong legal standard and failed to consider the best interests of the child. For the reasons that follow, we affirm.

"On appeal, we review the evidence in the light most favorable to the juvenile court's order." (Citation omitted.) *In the Interest of S.K.*, 248 Ga. App. 122 (545 SE2d 674) (2001).

So viewed, the evidence shows that L. R. M. was born in June 2012 and lived with his mother and father[1] at the paternal grandmother's house. In May 2013, after the father was incarcerated for possession of methamphetamine and theft, L. R. M. continued to live with his mother at the grandmother's house. During this time, the grandmother cared for the child and provided financial assistance to pay for the child's day care, diapers, and food.

In July 2013, the Division of Family and Children Services ("DFCS") filed a deprivation petition against the mother, who had an active case plan for drug use and inadequate supervision, alleging that the mother had unresolved substance abuse problems and was inadequately supervising her children, including L. R. M. In August 2013, the juvenile court entered an emergency order authorizing DFCS to remove the children from the grandmother's home and granting temporary custody

---

[1] At the time proceedings were commenced, the father was listed as the putative father of L. R. M., but he legitimated the child in February 2014.

2

to DFCS. DFCS then placed L. R. M. and his siblings in the home of a maternal sister.

In October 2013, the juvenile court found that L. R. M. was deprived based on the mother's substance abuse problem and the mother's and the incarcerated father's inability to provide adequate supervision, housing, and support for the child. The juvenile court ordered DFCS to develop a case plan to reunite L. R. M. with the mother. The mother's case plan required her to, among other things, obtain a substance abuse assessment, complete a drug treatment program, remain drug free for six months, submit to random drug screens, obtain stable housing and income, pay child support, and attend all scheduled visits.[2]

Following L. R. M.'s removal from her home, the grandmother was allowed two hours of supervised visitation every other week. By February 2014, the grandmother was allowed to have overnight visits, and she was aware that she was not to allow the mother to have unsupervised visits with L. R. M. In April 2014, however, DFCS terminated her unsupervised visits because of concerns that the grandmother was allowing the mother to have unsupervised visits with L. R. M., and

---

[2] As part of his case plan goals, the father was required to obtain stable housing and attend visitation upon his release from confinement.

because the mother had been arrested. Regarding the mother's arrest, the evidence showed that the mother was arrested on an outstanding bench warrant during a drug bust while in the company of the grandmother's other son, who had been recently released from prison. The mother was in jail for approximately 15 days, and after her release, she was arrested a second time for disorderly conduct.

Around that time, the grandmother filed the instant motion to intervene, seeking visitation and custody of L. R. M. under OCGA § 19-7-3. The juvenile court held a hearing on the grandmother's motion. During the hearing, the mother testified that she wanted the grandmother to have custody of L. R. M. until she could regain custody, provided that she was able to visit the child. The mother admitted that since her children were removed, she had not attended an inpatient drug treatment program as recommended. The evidence also showed that the grandmother worked as a truck driver, and that she took care of her disabled mother who lived with her. Although the mother and grandmother both claimed that they had not lived together since August 2013, other evidence showed that the mother had been living with the grandmother.

The DFCS case manager testified that L. R. M. was doing well in his current placement, and she did not want to separate him from his siblings. The case manager also had concerns about L. R. M. living with the grandmother because she allowed

4

her adult children and L. R. M.'s mother to have access to the house and the grandmother's children and the mother were not positive influences and might expose L. R. M. to criminal activity. The case manager, however, was amenable to resuming unsupervised visitations after a period of supervised visitation.

Following the hearing, the juvenile court denied the grandmother's motion to intervene, finding that OCGA § 19-7-3 does not provide an unconditional right to intervene, allowing permissive intervention would prejudice the adjudication of the case, and placing L. R. M. outside the custody of DFCS would impede the case plan to reunify the children. The juvenile court also denied the grandmother's request for visitation because she had no right to visitation and she failed to establish that the health or welfare of L. R. M. would be harmed unless visitation was granted or that the child's best interest would be served by visitation. The juvenile court provided, however, that DFCS was authorized, but not required, to offer visitation to the grandmother. This appeal followed.

1. Before addressing the merits of the grandmother's enumerations of errors, we must address whether we have jurisdiction to consider this direct appeal. See *Mauer v. Parker Fibernet, LLC*, 306 Ga. App. 160, 161 (701 SE2d 599) (2010)

("[A]n appellate court has a duty to raise the question of jurisdiction in all cases where there may be doubt about its existence.") (citations omitted).

Generally, the denial of a motion to intervene is not a final judgment and thus, is reviewable under the interlocutory appeal procedure. See *Davis v. Deutsche Bank Nat. Trust Co.*, 285 Ga. 22, 23 (673 SE2d 221) (2009). Pleadings and motions, however, are construed according to their substance and function and not merely by nomenclature. See *Forest City Gun Club v. Chatham County*, 280 Ga. App. 219, 220 (633 SE2d 623) (2006).

In this case, the grandmother filed her motion to intervene seeking custody and visitation under OCGA § 19-7-3 after the juvenile court entered its deprivation order in which it gave DFCS temporary custody of L. R. M. Under OCGA § 5-6-34 (a) (11), a direct appeal is authorized from"[a]ll judgments or orders in child custody cases awarding, refusing to change, or modifying child custody or holding or declining to hold persons in contempt of such child custody judgment or orders[.]" This Court has held that orders resulting from petitions for grandparent visitation and custody are directly appealable under OCGA § 5-6-34 (a) (11). See, e.g., *Hargett v. Dickey*, 304 Ga. App. 387, 388 (1) (696 SE2d 335) (2010); see also *In the Interest of J.N.*, 302 Ga. App. 631, 634 (1) (691 SE2d 396) (2010) (a juvenile court's order

6

denying a motion seeking a custody modification based on changed circumstances in a deprivation matter was a final directly appealable judgment under OCGA §§ 5-6-34 (a) (1) and 15-11-3). Since the trial court denied the grandmother's petition for custody and visitation, the denial of the grandmother's motion is directly appealable.

2. The grandmother contends that the trial court erred in ruling that she did not have an unconditional right to intervene under OCGA § 19-7-3 (b). Pretermitting whether the juvenile court erred in ruling that the grandmother did not have a right to intervene, the grandmother has failed to establish reversible error. Notably, although the juvenile court technically denied her motion to intervene, the juvenile court held a hearing in which the grandmother was allowed to present evidence in support of her request for visitation and custody, and it fully considered the merits of her claims before denying her motion. See *O'Neal v. Oxendine*, 237 Ga. App. 171, 177 (3) (514 SE2d 908) (1999) (no reversible error shown even though trial court denied petitioner's motion to intervene, because petitioner was nevertheless allowed to participate in hearing).

As to the merits of her motion, the grandmother has failed to show that the trial court erred in denying her request for visitation and custody. The grandmother contends that the trial court erred because, in determining that the health and welfare

of L. R. M. would not be harmed by the lack of visitation under OCGA § 19-7-3 (c), the trial court failed to consider the fact that L. R. M. lived with the grandmother, the grandmother provided financial support, and the grandmother established a pattern of regular care and visitation with the child. The grandmother also contends that the trial court ignored provisions of OCGA § 19-7-3 (c) and (d) requiring the trial court to give deference to the parents' wishes that the grandmother have visitation.

The decision to grant or deny a grandparent's petition for visitation is within the discretion of the trial court, and we will affirm the court's decision absent an abuse of that discretion. See *Srader v. Midkiff*, 303 Ga. App. 514, 516 (1) (693 SE2d 856) (2010). Where there is any evidence to support the trial court's ruling, we cannot say there was an abuse of discretion. See *Vines v. Vines*, 292 Ga. 550, 552 (2) (739 SE2d 374) (2013).

Under OCGA § 19-7-3 (c), a trial court may grant visitation rights to a grandparent if the court finds that the health and welfare of the child would be harmed unless visitation is granted,[3] and if the best interests of the child would be

---

[3] In considering whether the health or welfare of the child would be harmed without such visitation, the court shall consider and may find that harm to the child is reasonably likely to result where, prior to the original action or intervention:

served by such visitation. Although the grandmother argues that subsection (c) applies, the more pertinent standard governing this case is set forth in subsection (d) because the father was incarcerated.

> Under OCGA § 19-7-3 (d),
>
> if one of the parents of a minor child dies, is incapacitated, or is incarcerated, the court may award the parent of the deceased, incapacitated, or incarcerated parent of such minor child reasonable visitation to such child during his or her minority if the court in its discretion finds that such visitation would be in the best interests of the child. The custodial parent's judgment as to the best interests of the child regarding visitation shall be given deference by the court but shall not be conclusive.

OCGA § 19-7-3 (d).

---

> (A) The minor child resided with the grandparent for six months or more;
>
> (B) The grandparent provided financial support for the basic needs of the child for at least one year;
>
> (C) There was an established pattern of regular visitation or child care by the grandparent with the child; or
>
> (D) Any other circumstance exists indicating that emotional or physical harm would be reasonably likely to result if such visitation is not granted.

OCGA § 19-7-3 (c).

9

In this case, although the trial court was required to give some deference to the mother's desire to let the grandmother have custody and visitation, the mother's judgment about the best interests of L. R. M. was not conclusive, and the trial court's rejection of the mother's request was supported by the evidence presented at the hearing. That evidence showed that DFCS took L. R. M. into custody while the child was living with the grandmother and mother, and there is some evidence that the mother continues to live with the grandmother despite their protestations otherwise. The conditions precipitating DFCS's involvement have remained, as the mother has not made any progress with her DFCS case plan, continues to use drugs, and has failed to attend a drug treatment program. Additionally, the grandmother knew that the mother was not allowed to have unsupervised visitation with L. R. M., yet the grandmother ignored this restriction and allowed the mother to have such visitation while L. R. M. was in the grandmother's care. Finally, the DFCS case manager was concerned about having L. R. M., who was doing well in his current placement, live with the grandmother because the grandmother allowed the mother, who had unrehabilitated substance abuse issues, to have access to her house. In light of these circumstances, there was no abuse of discretion in denying the grandmother's request for custody and visitation.

*Judgment affirmed. Andrews, P. J., and Branch, J., concur.*