**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 8, 2022**

# In the Court of Appeals of Georgia

A21A1429. IN THE INTEREST OF N. C. et al., children.

PHIPPS, Senior Appellate Judge.

The mother of N. C., A. R., M. R., L. R., and P. R., all minor children,[1] appeals from three juvenile court orders: an order finding the five children to be dependent, denying the mother's motion for return of custody, and ordering that custody remain with the Fayette County Department of Family and Children Services ("DFCS"); and two subsequent orders granting two different fathers' petitions for legitimation and awarding the fathers temporary custody of three of the children. The mother contends, among other things, that the juvenile court erred in removing her five minor children, suspending her visitation, and denying her request for return of custody because the

---

[1] A. R. was born May 30, 2008; M. R. was born July 30, 2009; N. C. was born August 13, 2014; and twins L. R. and P. R. were born August 14, 2018.

record lacks clear and convincing evidence of dependency. In addition, the mother argues that the juvenile court erred in granting the petitions for legitimation and awarding the fathers temporary custody because the fathers are unfit. For the following reasons, we affirm the juvenile court's rulings.

On appeal from a juvenile court order finding children to be dependent, we review the record in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the children are dependent. *In the Interest of R. D.*, 346 Ga. App. 257, 259 (1) (816 SE2d 132) (2018). "In making this determination we neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the welfare of [children] whose well-being is threatened." Id. (citation and punctuation omitted).

Viewed in this light, the record shows that DFCS filed a dependency petition in July 2020, alleging that it had received a referral alleging that the mother had been arrested for cruelty to children. The juvenile court held a preliminary protective hearing and entered a dependency removal order placing the children in the temporary custody of DFCS. The juvenile court later issued a preliminary protective order

2

finding probable cause to believe that the children were dependent as defined in OCGA § 15-11-2 (22) and awarding custody to DFCS pending an adjudication hearing.

At the adjudicatory hearing, the DFCS case supervisor testified that in April 2020, DFCS received a report alleging the mother had been arrested after she slapped A. R. in the mouth and "busted her lip" at a chiropractor's office.[2] A few days later, DFCS received another report saying that the mother was making A. R. sleep on the floor and was threatening to feed her bread and water to punish her for causing the mother to be arrested. The DFCS case manager testified that A. R. and M. R. disclosed that the mother disciplines them with a belt and that the one-year-old twins are also spanked with a belt. The DFCS case manager also testified that A. R. disclosed that the mother hits the children "all over." According to A. R., one of the ways the mother disciplines P. R. and L. R. is to "hold them [upside down] by their feet to pop them on the bottom." The children's guardian ad litem testified that A. R. and M. R. disclosed to him that the mother hit P. R. and L. R. with a belt for pulling their diapers off and that A. R. disclosed that the mother struck her numerous times,

---

[2] On December 7, 2020, the mother was indicted on charges of cruelty to children in the first degree, family violence battery, and obstruction of an officer in connection with the April 2020 incident at the chiropractor's office.

3

including hitting and slapping her. Following the adjudicatory hearing, the juvenile court entered an order finding the children dependent and awarding temporary custody of the children to DFCS.

In August 2020, DFCS and the children's guardian ad litem filed a joint motion asking the court to suspend the mother's visitation due to her behavior during a supervised visit. According to the juvenile court's order entered on October 29, 2020, evidence presented at a hearing on the motion showed that at the most recent visitation, which was held at a restaurant, the mother brought cupcakes for four of the children to celebrate L. R. and P. R.'s birthday, but she did not bring a cupcake for A. R. The mother testified that she withheld the cupcake from A. R. as a normal form of discipline.[3] The mother also refused to pay for A. R.'s meal, but paid for the meals of the other four children. A. R., who was sitting at a separate table away from her four siblings and the mother, was observed crying.

The mother told the DFCS representative supervising the visitation that she did not order food for A. R. because A. R. lied about her and was the reason the children

---

[3] The mother also testified that she recalled making an Instagram post about giving A. R. bread and water as punishment when the mother was released from custody following her arrest.

entered foster care. The other four children witnessed their mother telling A. R. she would not pay for her meal. The mother became upset when a restaurant employee paid for A. R.'s meal, and when the mother began to raise her voice out of frustration with the situation, a manager told the mother that if she continued to be loud, she and her children would have to leave the restaurant.

The court's order noted that during the hearing, a therapist who conducted a parental fitness evaluation of the mother testified that the mother had "serious problems" in many aspects of her parenting. The therapist conducted trauma assessments of the three older children and testified that the information provided by the children indicated that the mother's behavior was "inappropriate and concerning." The children's guardian ad litem testified that all three older children confirmed that the mother held L. R. and P. R. upside down to spank them.

Regarding visitation, the DFCS case manager testified that A. R. and N. C. were consistent in stating that they did not want to visit with the mother. M. R. expressed interest in visiting with the mother, but did not want to return to her custody.

Based on the evidence presented, the juvenile court found the mother's behavior "unhealth[y] and inappropriate" and suspended the mother's visitation with the children in its October 2020 order.

At a judicial review hearing held on November 19, 2020, a police officer testified regarding the mother's April 2020 arrest for cruelty to children. According to the officer, he arrived at the chiropractor's office, observed injuries to A. R.'s lower lip, and took photographs of the injury. Another police officer testified that the mother admitted to him at the chiropractor's office that she "popped [A. R.] in the mouth" for back-talking.

The mother testified at the hearing and confirmed that she told an officer that she "popped [A. R.] in the mouth." According to the mother, she believes this is an acceptable form of corporal punishment. The mother claimed at the hearing that she has never abused her children.

Following the judicial review hearing, the juvenile court entered an order (a) finding that continued removal of the children from their home and continuation in foster care was in their best interest, (b) ordering that the children remain in the temporary custody of DFCS until further order of the court, (c) granting a request by DFCS to change the case plan from reunification to concurrent reunification and non-

reunification, (d) ordering the mother to comply with her case plan, and (e) continuing suspension of the mother's visitation with the children.

The mother subsequently filed a motion for return of custody, and the juvenile court held hearings on the motion in February 2021. The mother called numerous witnesses, including the children's pediatrician, godparents, cousin, and aunt. The children's pediatrician testified that she never noticed any signs that the children had been abused or neglected. According to the children's godfather, who is also their dentist, he never saw any indications of dental neglect or observed "anything out of the ordinary." He characterized the mother's interactions with the children at the dental office as "good." The children's godmother, the dental office manager, described the mother as "somewhat of a strict disciplinarian." She testified, however, that she had never seen the mother abuse the children and had not observed any bruises or marks on the children. The children's cousin similarly reported that she had never seen the mother abuse the children or noticed any bruises or marks on the children consistent with abuse. The children's aunt testified that she had observed the mother verbally disciplining her children, but had never seen her physically discipline them or noticed bruises or marks on them. She described the mother as a "good parent."

7

The mother also presented the testimony of a psychologist, Dr. James Powell, who evaluated the mother in 2017 for a possible law enforcement job and performed psychological and parenting evaluations of the mother in 2020. Dr. Powell opined based on the evaluations that the mother was "psychologically stable" and knowledgeable about parenting.

A second psychologist, Dr. Gerald Augustin, who evaluated the mother in July 2020 as a result of a referral by DFCS, also testified at the hearing. Dr. Augustin expressed concern that the mother did not accept any blame for her circumstances. In his written report, Dr. Augustin concluded that the mother has "limited coping skills, [limited] decision-making skills, and limited insight about her behavior."

The children's maternal grandmother testified that the mother was "a pretty good mother for the most part," but "very mean." She also testified that she was present when the mother was arrested for striking A. R. and saw injuries on A. R.'s face that day.

The children's foster care case manager testified that none of the children wanted to live with their mother. The case manager expressed concern that the children would face retaliation by the mother if returned to her custody. According to the case manager, the mother completed the first part of a parental fitness

evaluation, but refused to complete the second part, and has shown no willingness to comply with DFCS services. To complete her case plan, the mother still needed to participate in individual therapy, parenting classes, and family therapy to work on her communication skills with the children, as well as submit to drug screens. In addition, at the time of the hearing, the mother had yet to address the felony criminal charges she was still facing regarding A. R. At the hearing, the mother confirmed that she remained unwilling to comply with DFCS services.

The father of N. C. testified that when the mother is angry, she becomes aggressive and "grabs" the children while speaking to them. The father of L. R. and P. R. testified that he recently observed a video recording of the mother beating M. R. On February 12, 2021, DFCS, the children's guardian ad litem, and the father of N. C. filed a joint motion to reopen the evidence to present the video recording referred to by the father of L. R. and P. R. At a hearing in March 2021, the court admitted the video recording into evidence. The recording, which was made in 2018, shows the mother striking M. R. with a belt more than 40 times all over his unclothed body as M. R. cries and pleads with her to stop.

In a March 29, 2021 order, the juvenile court found that the children remained dependent, denied the mother's motion for return of custody, and ordered that custody

remain with DFCS. The court concluded that continued removal of the children from the home was in their best interest because they cannot be adequately and safely protected at home due to emotional, psychological, and physical abuse at the hands of the mother and her refusal to cooperate with DFCS to cure the causes of the children's dependency. The court also ordered that visitation by the mother continue to be suspended.

Also in March 2021, the juvenile court held hearings on petitions for legitimation filed by the father of N. C. and the father of L. R. and P. R. The children's case manager testified that N. C. and her father have a strong bond, that N. C.'s father is making sure N. C. attends school and is keeping up with her medical and dental needs and that the father has a good relationship with N. C.'s maternal grandmother. N. C.'s father is employed, has stable housing, and has a support system for taking care of N. C. while he is working. The children's maternal grandmother testified that N. C.'s father takes good care of N. C. and that she had no reason to think he would not be a good custodian of the child. The father of L. R. and P. R. testified that he is employed, has his own three-bedroom house, and has a lot of family support to help him take care of the children. While the father works, his aunt

takes care of L. R. and P. R., and he also has a good relationship with the children's maternal grandmother.

On April 1, 2021, the juvenile court granted the petition for legitimation filed by the father of N. C. and awarded temporary custody of N. C. to her father. On that same day, the juvenile court also granted the petition for legitimation filed by the father of L. R. and P. R. and awarded temporary custody of L. R. and P. R. to their father.

The mother appeals from the March 29 dependency and custody order and the April 1 legitimation orders.

1. As an initial matter, we must address our jurisdiction to consider this appeal, which the guardian ad litem has moved to dismiss. In his motion, the guardian ad litem contends that the case is not final pursuant to OCGA § 5-6-34 (a) (1) and, therefore, is not directly appealable. We disagree.

OCGA § 5-6-34 (a) (11) provides that "[a]ll judgments or orders in child custody cases awarding, refusing to change, or modifying child custody or holding or declining to hold persons in contempt of such child custody judgment or orders" are directly appealable. Here, the juvenile court's March 29, 2021 order adjudicating the children dependent, denying the mother's motion for return of custody, and

11

ordering that custody remain with DFCS is subject to direct appeal under this provision. See, e.g., *Bowman v. Bowman*, 345 Ga. App. 380, 381, n. 4 (811 SE2d 103) (2018); *In the Interest of L. R. M*, 333 Ga. App. 1, 3-4 (1) (775 SE2d 254) (2015).

The guardian ad litem also argues that the mother was required to bring a discretionary appeal to challenge the April 1, 2021 legitimation orders. Normally, appeals in legitimation cases must be initiated by filing an application for discretionary appeal. See OCGA 5-6-35 (a) (2), (b); see also *Brown v. Williams*, 174 Ga. App. 604, 605 (332 SE2d 48) (1985). However, a party seeking to challenge a child custody order entered in a legitimation case may file a direct appeal. See, e. g., *Caldwell v. Meadows*, 312 Ga. App. 70, 76-77 (4) (717 SE2d 668) (2011), disapproved in part on other grounds by *Mathenia v. Brumbelow*, 308 Ga. 714, 723 (3) (b), n. 14 (843 SE2d 582) (2020). Here, the juvenile court's legitimation orders also awarded custody, such that these orders are also directly appealable under OCGA § 5-6-34 (a) (11).

For these reasons, the guardian ad litem's motion to dismiss is denied.

2. Turning now to the merits of this appeal, we begin by noting that the mother's brief fails to comply with this Court's rules in a number of respects. For

12

instance, the brief does not include a statement of the method by which each enumeration of error was preserved for review on appeal. See Court of Appeals Rule 25 (a) (1). In addition, none of the enumerated errors are supported by specific reference to the record or transcript as required by Court of Appeals Rule 25 (c) (2) (i). Furthermore, the mother's arguments are intermingled with each other and do not follow the sequence of the enumerated errors. See generally Court of Appeals Rule 25 (c) (1) ("The sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly."). Consequently, it is difficult — if not impossible — to discern the nature and merit of the mother's arguments.

Although the mother is proceeding pro se, she is not relieved of her obligation to conform to this Court's rules. *Bennett v. Quick*, 305 Ga. App. 415, 416 (699 SE2d 539) (2010). "The rules of this [C]ourt are not intended to provide an obstacle for the unwary or the pro se appellant"; however, briefs that do not conform to our rules hinder our ability to determine the basis and substance of an appellant's contentions on appeal. *Williams v. State*, 318 Ga. App. 744, 744-745 (734 SE2d 745) (2012). In addition, "[t]he burden is upon the party alleging error to show it affirmatively in the

13

record," and "[a]ppellate judges should not be expected to take pilgrimages into records in search of error without the compass of citation and argument." *Bennett*, 305 Ga. App. at 416 (citations and punctuation omitted). Further, while we exercise our discretion to consider the mother's arguments on appeal to the extent we are able to do so, if we have missed something in the record or have misconstrued an argument due to her non-conforming brief, the responsibility rests with the mother. See *Clemmons v. State*, 340 Ga. App. 57, 58 (1) (796 SE2d 297) (2017).

3. In multiple related enumerations, the mother contends that the juvenile court abused its discretion by removing her five minor children, suspending her visitation, and denying her motion to return custody of the children to her because the record does not contain clear and convincing evidence of dependency. We disagree.

Where the children have been in the custody of DFCS, the correct inquiry is whether the children would be dependent if returned to the parent as of the date of the hearing. See *In the Interest of T. D.*, 309 Ga. App. 9, 12 (1) (709 SE2d 883) (2011).[4]

---

[4] Prior to the substantial revisions to the Juvenile Code in 2013, a juvenile court was authorized "to award custody to the Department of any minor child shown to be 'deprived.'" *In the Interest of S. C. S.*, 336 Ga. App. 236, 244, n. 4 (784 SE2d 83) (2016). While the current version of the Juvenile Code uses the word "dependent" instead of "deprived," the definition of a "dependent child" and a "deprived child" are virtually the same. Compare OCGA § 15-11-2 (8) (2013) with OCGA § 15-11-2 (22), (48) (2020). Thus, "we find that our previous decisions addressing the deprivation of

14

OCGA § 15-11-2 (22) (A) defines "dependent child" as a child who "[h]as been abused or neglected and is in need of the protection of the court[.]" As relevant here, the Juvenile Code defines the term "abuse" as "[a]ny nonaccidental physical injury or physical injury which is inconsistent with the explanation given for it suffered by a child as the result of the acts or omissions of a person responsible for the care of a child; . . . [e]motional abuse; [or] [t]he commission of an act of family violence . . . in the presence of a child." OCGA § 15-11-2 (2) (A), (B), (E). "Neglect," in turn, is defined in part as "[t]he failure to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (48) (A).

When determining whether a child is without proper parental care or control, courts must consider factors such as "[e]gregious conduct or evidence of past egregious conduct of a physically, emotionally, or sexually cruel or abusive nature by [a] parent toward his or her child or toward another child of such parent" and "[p]hysical, mental, or emotional neglect of [the] child or evidence of past physical, mental, or emotional neglect by the parent of such child or another child of such

a child are relevant to appeals involving the dependency of a child." *In the Interest of S. C. S.*, 336 Ga. App. at 244, n. 4.

15

parent." OCGA § 15-11-311 (a) (4), (5). In determining whether a child is dependent, "[c]onsideration of past misconduct is appropriate because the juvenile court is not required to reunite a child with a parent in order to obtain current evidence of deprivation or neglect. Nevertheless, the record must contain evidence of present dependency, not merely past or potential future dependency." *In the Interest of H. B.*, 346 Ga. App. 163, 165 (1) (816 SE2d 313) (2018) (citations and punctuation omitted).

In this case, the evidence is sufficient to permit a rational trier of fact to find by clear and convincing evidence that the children, if returned to their mother as of the date of the most recent hearing, would be dependent. The record contains evidence that while the children were in the mother's custody, the mother abused them, including injuring A. R. by hitting her in the mouth and beating M. R. extensively with a belt. Even after the children were removed from her custody, the mother continued emotionally abusing A. R. In addition, the mother refuses to admit any wrongdoing, and although she has completed a psychological evaluation and a partial parental fitness evaluation, the mother has otherwise refused to cooperate with DFCS by participating in family therapy, parenting classes, or any other services to address conditions that may have led her to abuse the children. In fact, at the time of

16

the hearing, she remained unwilling to comply with her case plan and maintained that beating M. R. with a belt was appropriate discipline.

We recognize that the mother presented witnesses who testified that she is a good mother and that they had not seen signs of abuse. The mother argues that the juvenile court erred in showing bias against her and allowing caseworkers to fabricate evidence and lie under oath. In particular, the mother contends that the juvenile court erred "in trying to force the [m]other to comply with [DFCS] service providers premised off of a fabricated psychological evaluation that was allegedly administer[ed] by someone named Gerald Augustin[] and Natalie Polizzi[.]"[5] The psychological evaluation in question, which is part of the appellate record, lists Gerald Augustin and Natalie Polizzi as the evaluators. At the hearing on the mother's motion for return of custody, the mother claimed that she "didn't speak to Gerald Augustin or Natalie [Polizzi]" and stated, "I don't feel like I should have to do recommendations based off of the fabricated psychological." The juvenile court acknowledged that the mother testified that she never completed a psychological

---

[5] The mother also contends she was never given the opportunity to cross-examine the "doctors who claim they have spoken to [her] regarding a psychological evaluation" and that the juvenile court erred in refusing to admit certain evidence, but provides no factual or legal support for these contentions.

17

evaluation with Dr. Augustin, but specifically found that the mother "lacks veracity" and that her statements "are not reliable." As previously noted, this Court does not determine witness credibility or weigh the evidence. *In the Interest of R. D.*, 346 Ga. App. at 259 (1).

Because the mother has failed to show with citation to the record any evidence that the children are no longer dependent, and because clear and convincing evidence supports the juvenile court's finding of dependency at the time of the hearing, these enumerations lack merit.

4. The mother contends that the juvenile court abused its discretion because the denial of visitation violates her rights under the Fourteenth Amendment to the United States Constitution. This enumeration of error presents nothing for this Court to review.

The mother argues that "[t]here is a fundamental right under the Fourteenth Amendment for a parent to oversee the care, custody, and control of a child," and that "[t]he trial court's decision to suspend visitation infringes on her right to be secure as guaranteed by the Fourth Amendment of the United States Constitution." However, she has failed to show that she raised this constitutional issue below and obtained a ruling from the juvenile court on any constitutional claims. "A constitutional issue

18

cannot be considered when asserted for the first time on appeal but must be clearly raised in the trial court and distinctly ruled upon there." *In the Interest of A. A.*, 253 Ga. App. 858, 862 (3) (560 SE2d 763) (2002) (citation and punctuation omitted). The juvenile court did not rule on any such claim in its March 29, 2021 or April 1, 2021 orders. Even if the mother had raised this constitutional issue below, her failure to obtain a ruling from the juvenile court precludes appellate review. See *McAllister v. State*, 325 Ga. App. 583, 586 (2) (754 SE2d 376) (2014).

5. The mother also contends that the juvenile court erred in denying her motion to recuse the juvenile court judge. The mother cites no authority in support of this enumeration of error other than prior versions of Uniform Juvenile Court Rules 17.3 and 17.4, and she makes no meaningful argument. This enumeration of error is therefore deemed abandoned. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citations and punctuation omitted).

6. Finally, the mother contends that the juvenile court erred in granting legitimation and temporary custody to "fathers who have proven to be unfit by law." We disagree.

This Court reviews a trial court's ruling on a legitimation petition for abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling. *Mathenia v. Brumbelow*, 308 Ga. 714, 715 (1) (843 SE2d 582) (2020). In considering a legitimation petition, a trial court must first determine whether the biological father has abandoned his opportunity interest to develop or maintain a relationship with the child. *Westbrook v. Eidys*, 356 Ga. App. 619, 622 (1) (848 SE2d 660) (2020). And if the trial court concludes that the biological father has not abandoned this opportunity interest, it must also determine whether legitimation is in the best interest of the child. See OCGA § 19-7-22 (d) (1) (providing, in part, that "the court may issue an order declaring the biological father's relationship with the child to be legitimate, provided that such order is in the best interests of the child[.]") Furthermore,

> [t]he judge hearing the issue of custody shall make a determination of custody of a child and such matter shall not be decided by a jury. . . . The duty of the judge in all such cases shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly.

20

OCGA § 19-9-3 (a) (2).

Here, the juvenile court found that the father of L. R. and P. R. had not waived or otherwise forgone his opportunity interest to have a legal relationship with the children. The juvenile court also found that it was in the best interests of L. R. and P. R. to grant the petition to legitimate and award temporary custody to their father.

In support of her argument, the mother contends that the father of L. R. and P. R. was "out on bond for child abandonment prior to the alleged dependency" and was significantly behind on child support obligations. However, the record shows that the child abandonment charge against the father of L. R. and P. R. was nolle prossed. Furthermore, the record contains evidence that L. R. and P. R. have a good relationship with their father and that he is employed, has stable housing, and has family support to care for the children. Consequently, we cannot say that the juvenile court abused its discretion in finding that it was in the best interests of L. R. and P. R. to grant the petition to legitimate and award temporary custody to their father.

The mother makes no argument regarding the father of N. C. in support of this enumeration of error. This enumeration is therefore deemed abandoned with respect to him. See Court of Appeals Rule 25 (c) (2); *Brittain*, 329 Ga. App. at 704 (4) (a).

*Judgment affirmed. Rickman, C. J., and McFadden, P. J., concur.*